Submitted September 4, 2009, affirmed in part; reversed in part; remanded January 20, petition for review allowed July 8, 2010 (348 Or 523)

STATE ex rel SHANE I. SOPHER,
*Relator-Appellant,*

*v.*

Michael WASHINGTON,
Chairperson of the Oregon Board of Parole
and Post-Prison Supervision,
*Defendant-Respondent.*

Marion County Circuit Court
06C14844; A134157

225 P3d 142

Shane I. Sopher filed the briefs *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This is a mandamus action. ORS 34.105 - 34.240. Relator committed aggravated murder in 1992, when he was 16 years old. He was convicted and sentenced to life in prison. ORS 163.095 (1991); ORS 163.105(1)(c) (1991). He petitioned the Marion County Circuit Court for a writ directing defendant, the chair of the Board of Parole and Post-Prison Supervision (board), to hold a hearing and set an initial parole release date for him pursuant to ORS 144.120(1)(a) (1991). He also challenged the board's application to him of the board's rules relating to juvenile aggravated murderers. The board moved to dismiss the alternative writ on the grounds that the board had no duty to afford relator a hearing under ORS 144.120 (1991) and that mandamus was not a proper remedy for relator's rule-based claim. The trial court granted the board's motion, and relator appeals. We affirm in part, reverse in part, and remand.

The relevant facts are undisputed. As noted, relator was 16 years of age when he committed aggravated murder in 1992. He was tried and convicted in adult court. *See* ORS 419.533(1)(b) (1991) (providing for waiver of juvenile court jurisdiction and remand to circuit court of juveniles aged 15 or over who commit aggravated murder). Under ORS 163.105(1) (1991) sentencing options for aggravated murder included death, life in prison without the possibility of parole, and life in prison with the possibility of parole after service of a mandatory minimum sentence of 30 years. Under ORS 161.620 (1991), however, an offender who committed his or her crime at age 15 or 16 and who was remanded from juvenile to adult court was not subject to a sentence of death, life without possibility of parole, or "any mandatory minimum sentence." Consistently with that provision, the trial court sentenced relator on his aggravated murder conviction to life in prison. ORS 163.105(1)(c) (1991).

Relator began serving his sentence in March 1993. The board initially informed him that he would receive a hearing under ORS 144.120, which, in regard to offenders sentenced to life in prison, required the board to hold a hearing within one year of an offender's admission to prison and to establish an initial parole release date for the offender. The

board later informed relator that, in place of a hearing under ORS 144.120, he would receive a hearing under rules adopted specifically to apply to offenders convicted of aggravated murder committed when they were juveniles.

In 1999, relying on its authority under the relevant versions of ORS 144.110(2)(b) (directing the board to release offenders convicted of aggravated murder on parole only as provided in ORS 163.105); ORS 163.105(1) (establishing, in part, the sentence of life with the possibility of parole); ORS 161.620 (prohibiting the imposition of mandatory minimum sentences on juvenile offenders convicted in adult court); and ORS 144.780(1) (generally authorizing the board to adopt rules "establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole"), the board added provisions governing parole procedures for juvenile aggravated murderers to its existing rules pertaining to adult aggravated murderers. *See* OAR 255-032-0005 - 255-032-0040 (May 18, 1999) (the juvenile aggravated murder (JAM) rules). The JAM rules require the board to hold an initial prison term hearing for juvenile aggravated murderers and to set an aggravated murder review hearing date rather than an initial parole release date. OAR 255-032-0005(4) (May 18, 1999); *see also* ORS 163.105(2) - (4) (providing for aggravated murder review hearings). The rules also establish criteria for determining the "ranges" of the prison terms that juvenile aggravated murderers must serve before receiving a review hearing—and, hence, the dates of such hearings—in particular instances. OAR 255-032-0011 (May 18, 1999). As set out in the exhibits to the rules, the ranges are based on the "crime severity rating" of the offender's offense and various "risk assessment" factors, including "Age at First Contact with Juvenile Justice System," "History of Criminal Behavior," "Prior Supervision Behavior," "History of Drug or Alcohol Use," and "History of Discipline at School." OAR 255-032-0011, ex P-I - P-III (May 18, 1999). Application of the factors to a particular offender results in a prison term of anywhere from 240 months to "life," that is, denial of an aggravated murder review hearing date. *Id.* An offender whose prison term is established as "life" is entitled to request a review hearing after 480 months. OAR 255-032-0011(5) (May 18, 1999); *see also Engweiler v. Board of Parole,*

343 Or 536, 549, 175 P3d 408 (2007) (*Engweiler IV*) (explaining JAM rules).

Pursuant to its newly adopted rules, in August 1999, the board issued an order establishing a 400-month prison term for relator and setting his "murder review" date for November 2025. Based on the board's notice to relator that he had the right to petition this court for judicial review, relator sought judicial review of the order. This court dismissed review on the ground that, under ORS 144.335 (1999), the order was not subject to judicial review. *Sopher v. Board of Parole*, 197 Or App 118, 119, 103 P3d 683 (2005).

Relator then filed the petition for a writ of mandamus that is the subject of this appeal. In his first claim for relief, he alleged that the board had failed to perform its non-discretionary duty to conduct an initial parole release hearing and establish an initial parole release date for him under ORS 144.120(1)(a) (1991) and the board's "parole matrix" criteria applicable generally to persons subject to parole, as set out in OAR chapter 255, division 32, Exhibits A through E. Relator alleged in part that initial parole release dates previously had been established under those provisions for other juvenile aggravated murderers and that he previously had been informed by the board that the provisions applied to him. He further alleged that the board's failure to perform its alleged nondiscretionary duty to establish a parole release date for him deprived him of his liberty interest in parole as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and violated his rights to equal privileges and immunities under Article I, section 20, of the Oregon Constitution and to equal protection under the Equal Protection Clause of the Fourteenth Amendment.

In his second claim for relief, relator alleged that the board's application to him of the JAM rules was unlawful in various respects, that the board had a duty to correct its errors, and that it had refused to do so. Specifically, relator alleged that the board's application of the JAM rules violated the "parole matrix system," the board's parole matrix rules, and its policies and practices applying those rules, *see Hamel*

*v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000) (explaining parole matrix system); that application of the JAM rules effectively deprived him of any possibility of parole release and imposed a mandatory minimum sentence on him in violation of the prohibition in ORS 161.620 (1991) on mandatory minimum sentences for juveniles remanded to adult court, *but see Engweiler IV*, 343 Or at 551-53 (JAM rules do not violate prohibition in ORS 161.620 on mandatory minimum sentences); that, by increasing his punishment, application to him of the JAM rules violated constitutional prohibitions on *ex post facto* laws; that application of the rules resulted in imposition of a disproportionate sentence and violated his rights to equal protection; that the rules permitted the board to "prejudge" his case and therefore violated his rights to due process; and that the board's establishment under the JAM rules of a hearing date rather than an initial parole release date deprived him of his interest in earned time sentence reductions, in violation of his rights to due process and equal protection.

Finally, in his third claim for relief, relator alleged that the board failed to perform its duty to give him accurate notice of his right to seek judicial review of its order establishing his aggravated murder review hearing date.

As noted, the board moved to dismiss the writ. As to relator's first claim, the board argued that it had no duty to provide a prison term hearing or set an initial parole release date for relator under ORS 144.120(1)(a) (1991) because that version of the statute expressly excludes offenders convicted of aggravated murder. As to relator's second claim, the board argued that the board's adoption of the JAM rules was a discretionary act for which mandamus relief does not lie. The board also argued that mandamus was not an available remedy for the board's erroneous advice to relator regarding his right to judicial review, because relator had no actual right to judicial review and because he received an adequate alternative remedy, that is, administrative review by the board of its order.

The trial court concluded that the board had no duty to set a parole release date for relator as asserted in relator's first claim for relief; that, as to his second claim, mandamus

"will not lie to challenge the Board's exercise of discretion" to adopt rules that relator "does not contend * * * were applied incorrectly to him"; and that relator had no cognizable right to accurate notice of his judicial review rights as asserted in his third claim.[1] The trial court therefore dismissed the writ.

In his first assignment of error on appeal, relator argues that the trial court erred in determining that he was not entitled to a hearing and the establishment of an initial parole release date under ORS 144.120(1)(a) (1991). In particular, relator challenges the trial court's reliance on the 1991 version of that statute, which expressly excludes persons convicted of aggravated murder. According to relator's understanding, the Oregon Supreme Court has determined that that amendment merely "clarified" the board's authority as to offenders convicted of aggravated murder committed when they were adults. By contrast, relator argues, the amendment does not apply to juvenile aggravated murderers like himself. Rather, he understands the Oregon Supreme Court to have held that juvenile aggravated murderers are entitled to the same initial prison term hearings under ORS 144.120 as were afforded to offenders convicted of crimes other than murder or aggravated murder that were committed before November 1, 1989. *See Engweiler IV*, 343 Or at 543-45 (reading ORS 144.110(2)(b) (1989), ORS 163.105(1) (1989), and ORS 161.620 (1989) together and concluding that ORS 161.620 "trumps" the former two statutes and that, accordingly, offenders convicted of aggravated murder committed while they were juveniles and sentenced to life in prison are "entitled to the possibility of parole"); *State ex rel Engweiler v. Cook*, 340 Or 373, 383, 133 P3d 904 (2006) (*Engweiler III*) (in context of juvenile aggravated murderer's mandamus action seeking "earned time" sentence reductions, noting that the offender, who was sentenced to an indeterminate life sentence, was "in the same position as an inmate sentenced before the adoption of the guidelines" and that "the board is responsible for determining the actual duration of his imprisonment"). Relator argues that an

---

[1] Relator does not assign error on appeal to the trial court's dismissal of his third claim, relating to the board's provision to him of incorrect information concerning his right to judicial review.

analysis of ORS 144.120(1)(a), according to this court's methodology of statutory construction, also leads to that result. Relator further argues that, based on the advice of counsel, the board previously has regarded itself as having the authority to afford initial parole hearings and initial parole release dates to juvenile aggravated murderers, including relator, regardless of the date of commission of the crimes. Finally, relator argues that the board's refusal to provide him with an initial parole hearing and release date violates his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution; violates the proportionality requirements of the Eighth and Fourteenth Amendments to the United States Constitution; and violates the *ex post facto* provisions of Article I, section 21, of the Oregon Constitution and Article I, section 10, of the United States Constitution.

The board does not dispute that, as the Oregon Supreme Court has recognized, relator is entitled to the possibility of parole and that the board is responsible for determining the actual duration of relator's imprisonment. It argues that, notwithstanding the board's authority generally in relation to juvenile aggravated murderers, and notwithstanding any prior policy or practice of the board, the 1991 version of ORS 144.120(1)(a)—the version that applies to relator by reason of his commission of his crime in 1992— plainly excepts from its ambit persons convicted of aggravated murder. Moreover, that amendment, by its terms, is not qualified in regard to whether such persons were convicted of aggravated murder committed when they were adults or when they were juveniles. *See Engweiler v. Board of Parole*, 340 Or 361, 368, 369, 133 P3d 910 (*Engweiler II*) (1991 amendment to ORS 144.120(1)(a) "exclude[d] from the * * * parole hearing requirement those individuals who had been sentenced for aggravated murder"; "after 1991, no * * * statute required the board to set an initial release date for" juvenile aggravated murderers).

As to relator's constitutional arguments, the board first notes that he preserved only his claims based on the due process and equal protection clauses of the Fourteenth Amendment and on Article I, section 20. The board further

argues that relator's due process claim—that he has a liberty interest in an initial parole release date—fails along with his statutory claim that he is entitled to such a date under ORS 144.120(1)(a) (1991); and that his claims under Article I, section 20, and the Equal Protection Clause fail because juvenile aggravated murderers are not a "true class" for the purpose of the state constitutional provision and because, for purposes of the federal clause, the board's rules are rationally related to a legitimate governmental purpose.

We agree with the board in all respects. Although, as the Supreme Court explained in *Engweiler IV*, 343 Or at 545, relator is entitled to the possibility of parole and the board is responsible for determining the duration of his prison term, ORS 144.120(1)(a) (1991) is not the mechanism by which the board is required to carry out that responsibility. That statute expressly excepts from its application offenders sentenced to life in prison for aggravated murder, and related statutes do not preclude that exception from applying to offenders who were juveniles when they committed that crime. *Cf. State ex rel Engweiler v. Powers*, 232 Or App 214, 225-29, 221 P3d 818 (2009) (*Engweiler V*) (juvenile aggravated murderer who committed crime in 1990 was not entitled to parole hearing and initial parole release date under ORS 144.120(1)(a) (1989), notwithstanding the fact that the 1989 version of that statute did not expressly exempt offenders convicted of aggravated murder; analysis of related statutes including ORS 144.110 (1989), ORS 161.620 (1989), and ORS 163.105 (1989) demonstrated that the offender was subject to the aggravated murder review hearing process set out in ORS 163.105(2) to (4) (1989), not the initial parole hearing process set out in ORS 144.120(1)(a) (1989)). Relator therefore was not entitled to a hearing or the establishment of an initial parole release date under that statute.

■ Moreover, it follows that the board's refusal to afford relator a hearing under ORS 144.120(1)(a) (1991) did not violate any cognizable liberty interest in parole protected by the Due Process Clause of the Fourteenth Amendment. Also, because juvenile aggravated murderers do not constitute a true class and because the aggravated murder review hearing process set out in ORS 163.105(2) to (4) (1991) is rationally related to a legitimate governmental interest, the board's

action of refusing to afford relator a hearing and an initial parole release date under ORS 144.120(1)(a) (1991) did not violate the guarantee of equal privileges and immunities under Article I, section 20, or the guarantee of equal protection under the Fourteenth Amendment. Relator's remaining constitutional arguments relating to his first claim for relief are not preserved. The trial court did not err in dismissing relator's first claim for relief based on ORS 144.120(1)(a) (1991).

We turn to relator's second assignment of error, in which he argues that the trial court erred in dismissing his claim based on the board's alleged duty to correct its erroneous application to him of the JAM rules. As noted, the trial court dismissed that claim on the ground that relator was challenging the board's adoption of the JAM rules and that mandamus "will not lie to challenge the Board's exercise of discretion" to adopt rules. Relator contends that, contrary to the trial court's understanding, he clearly was challenging, on numerous grounds, the board's application of the rules to him. He urges us to reverse the trial court's dismissal of his second claim and remand for consideration of those arguments.

The board concedes that the trial court erred in dismissing relator's claim based on the board's argument below that the board had discretion to adopt the JAM rules and that mandamus does not lie in regard to discretionary acts. The board nevertheless argues that the trial court correctly dismissed the claim and that we should affirm its dismissal. According to the board, the JAM rules are not invalid on any ground asserted by relator and—with the "possible exception" of relator's allegation that the board's application of the JAM rules to him without first affording him a hearing resulted, as a factual matter, in the board "prejudging" his case in violation of his due process liberty interest in parole— each of those grounds presents a purely legal issue that this court can review and decide on this record.

Relator replies that, consistently with *State ex rel Osborne v. Cook*, 185 Or App 317, 325, 59 P3d 531 (2002), a motion to dismiss an alternative writ of mandamus is the functional equivalent of a motion to dismiss a claim under ORCP 21 A(8) for failure to state a claim and that this court will not consider an argument made for the first time on

appeal as an alternative basis for affirmance of a trial court's dismissal of an alternative writ.

We agree with and accept the board's concession that the trial court erred in dismissing relator's second claim on the ground that it constituted a challenge to the board's adoption of the rules and that mandamus did not lie to challenge that exercise of discretion. *See, e.g., State ex rel Bldg Council v. Bureau of Labor*, 61 Or App 22, 29, 656 P2d 325 (1982) ("The principle is well established that mandamus lies to compel an officer to *exercise* discretion when he has the duty to do so, but not to direct the *manner* in which the discretion will be exercised." (Emphasis in original; citing *State ex rel. Ricco v. Biggs*, 198 Or 413, 424, 255 P2d 1055 (1953).)).

We agree with relator, however, that this court will not affirm the trial court's dismissal on alternative grounds offered by the board for the first time on appeal. *Osborne*, 185 Or App at 325; *see also Rogers v. Valley Bronze of Oregon, Inc.*, 178 Or App 64, 68-70, 35 P3d 1102 (2001) (on the plaintiff's appeal of the dismissal of his complaint under ORCP 21 A(8), court declined to consider the defendant's argument in support of dismissal made for the first time on appeal). We therefore reverse the trial court's dismissal of relator's second claim and remand that claim for consideration in the first instance of relator's challenges to application of the JAM rules.[2]

Affirmed in part; reversed in part; remanded.

---

[2] As described, the JAM rules applicable to relator and other juvenile aggravated murderers for the purpose of establishing the dates of those offenders' aggravated murder review hearings under ORS 163.105(2) to (4) provide for the application of individualized criteria to particular offenders and permit the board to establish prison terms for such offenders of between 240 months and "life" that must be served before the offenders receive their review hearings. In *Engweiler V*, 232 Or App at 228-29, after concluding that the relator in that case was subject to the aggravated murder review hearing process set out in ORS 163.105(2) to (4) (1989) rather than the process set out in ORS 144.120(1)(a) (1989), we noted that we expressed no opinion about the proper timing of such hearings for juvenile aggravated murderers. In this case as well, we express no opinion on that issue, specifically, whether the absence of minimum periods of confinement in the sentences of those offenders necessarily relieves the board of the obligation to provide such hearings upon the requests of the offenders made "[a]t any time after 20 years" from the date of imposition of the sentences or permits the board to apply individualized criteria in determining the timing of the hearings in particular cases.