Argued and submitted February 4, OAR 255-032-0005(4), (5) held valid July 28, 2021

CRIMINAL JUSTICE REFORM CLINIC
AT LEWIS & CLARK LAW SCHOOL,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Agency/Board/Other

A172093

496 P3d 688

Pursuant to ORS 183.400, petitioner challenges the validity of OAR 255-032-0005(4) and (5), two rules of the Board of Parole and Post-Prison Supervision which relate to parole consideration for juveniles convicted of aggravated murder between 1989 and 1995. Petitioner contends that the rules violate the Eighth Amendment to the United States Constitution, the *ex post facto* provisions of the state and federal constitutions, and ORS 161.620. *Held*: OAR 255-032-0005(4) and (5) are valid. ORS 183.400 permits only facial challenges, and OAR 255-032-0005(4) and (5) do not categorically violate either the Eighth Amendment or the *ex post facto* provisions of the state and federal constitutions. Further, OAR 255-032-0005(4) and (5) do not violate ORS 161.620 because they do not (and cannot) impose a true life or statutory mandatory minimum sentence.

OAR 255-032-0005(4), (5) held valid.

Mieke de Vrind argued the cause for petitioner. Also on the briefs were Aliza B. Kaplan and Criminal Justice Reform Clinic, Lewis & Clark Law School.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

OAR 255-032-0005(4), (5) held valid.

## KAMINS, J.

Pursuant to ORS 183.400, petitioner challenges the validity of OAR 255-032-0005(4) and (5) (the JAM-II rules), two rules of the Board of Parole and Post-Prison Supervision (the board) which relate to parole consideration for juveniles convicted of aggravated murder between 1989 and 1995. Petitioner contends that the rules violate the Eighth Amendment to the United States Constitution, the *ex post facto* provisions of the state and federal constitutions, and ORS 161.620.[1] Because the rules do not facially violate the state or federal constitutions or Oregon statute in the ways that petitioner claims, they are valid.

The JAM-II rules are the latest chapter in a story that has filled many reporter pages. To make that long story short, the board enacted the first iteration of these rules (the JAM-I rules) to fill a "void" in the rules governing juvenile aggravated murderers who committed their offense between 1989 and 1995.[2] *Engweiler v. Board of Parole*, 343 Or 536, 548, 175 P3d 408 (2007) (*Engweiler I*). However, because the JAM-I rules required juveniles to undergo "an intermediate process before they become eligible for parole consideration," which was "inconsistent with the statutes requiring the board to conduct a parole hearing and set an initial release date," the Oregon Supreme Court struck them. *Engweiler v. Persson/Dept. of Corrections*, 354 Or 549, 553, 316 P3d 264 (2013) (*Engweiler III*). The JAM-II rules are the board's effort to address the deficiencies identified by the Oregon Supreme Court.

The JAM-II rules provide:

"Inmates, who were juveniles and waived to adult court pursuant to ORS 419C.340 through 419C.364, and were under the age of 17 years at the time of their crime(s), and were convicted of Aggravated Murder, per ORS 163.095, and whose crimes were committed after October 31, 1989 and prior to April 1, 1995, shall receive a prison term

---

[1] Because petitioner proceeds solely under the Eighth Amendment and does not raise a state constitutional challenge under Article I, section 16, we do not address the JAM-II rules' validity under that provision.

[2] These rules applied to "a total of five inmates." *Engweiler v. Board of Parole*, 343 Or 536, 542 n 5, 175 P3d 408 (2007).

hearing. At the hearing, the Board shall set a projected parole release date, in accordance with the guidelines and matrix that apply with respect to the date of the crime."

OAR 255-032-0005(4). The rules further provide that "[t]he Board will apply the applicable procedural rules under OAR divisions 30 and 35, in effect at the time of the hearing, for the conduct of the hearing." OAR 255-032-0005(5). Because they require the board to set a "projected parole release date" at the juvenile's first prison term hearing, the JAM-II rules eliminate the intermediate review hearing that violated ORS 161.620.

Although the board addressed the problem of the intermediate review hearing, petitioner contends that the JAM-II rules "traded one unconstitutional parole scheme for another." Accordingly, petitioner filed this rule challenge arguing that the rules facially violate the Eighth Amendment, the *ex post facto* provisions, and ORS 161.620. *See* ORS 183.400(4) (a rule may be declared facially invalid if it violates a constitutional provision or exceeds an agency's statutory authority). Our review is limited to "an examination of: (a) [t]he rule under review; (b) [t]he statutory provisions authorizing the rule; and (c) [c]opies of all documents necessary to demonstrate compliance with applicable rulemaking procedures." ORS 183.400(3).

Petitioner's Eighth Amendment challenge rests on the contention that the JAM-II rules use an "adult matrix" that treats youth as an aggravating factor, or at least not a mitigating one. According to petitioner, the adult matrix does this in three ways. First, the matrix factor (D) considers age at the time of the crime to reduce the risk of reoffense for older individuals, which may result in a shorter prison term. Petitioner also points out that factor (F) increases an offender's risk level if they have had substance abuse problems within three years prior to the crime. According to petitioner, this "disproportionately punishes juveniles as compared to adults because it captures a larger percentage of childhood compared to adulthood." Finally, petitioner argues that the matrix "utterly fails to consider youth as a mitigating factor." The state responds that the statutory and regulatory scheme must be viewed holistically, rather

than by parsing individual factors, and, when so viewed, the JAM-II rules allow for the consideration of youth as a mitigating factor.

The Eighth Amendment requires that an offender's youth be considered as a mitigating factor in certain circumstances. Because "youth matters for purposes of meting out the law's most serious punishments[,] *** a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *State v. Link*, 367 Or 625, 646, 482 P3d 28 (2021) (internal quotation marks omitted). Accordingly, "the first step to determine whether a sentence comports with [the Eighth Amendment] is to determine whether the sentence is life without parole (or the functional equivalent). If the answer is yes, then the second question is whether the sentencing scheme [provides an] individualized-sentencing requirement." *Id*. at 659. For the second step, the Eighth Amendment requires that a sentencer be given an opportunity for "individualized consideration of a defendant's youth." *Jones v. Mississippi*, 593 US ___, ___, 141 S Ct 1307, 1321, 209 L Ed 2d 390 (2021).

We cannot say that the JAM-II rules facially violate the Eighth Amendment. Without the application of the matrix to an actual juvenile offender, we first cannot determine whether the prison term imposed prior to release amounts to one of "the law's most serious punishments," which the Oregon Supreme Court has limited to life without parole or its functional equivalent. *Link*, 367 Or at 646, 659. Even assuming that the JAM-II rules could be viewed to result in the functional equivalent of a life sentence, for purposes of the second step, the sentencing scheme *does* allow for the consideration of youth as a mitigating factor. The matrix itself allows for the consideration of any "other" factor, including an offender's youth at the time of commission.

Overall, to the extent it can be said that the JAM-II rules lead to the one of the law's "most serious punishments," the statutes and rules allow for sufficient consideration of a juvenile's age to comport with the Eighth Amendment. Although several matrix factors address advancing age and behavior over time, we cannot say that considering

advancing age as a mitigating factor in assessing the risk of reoffense categorically offends the Eighth Amendment regardless of other opportunities to consider youth as a mitigating factor. Nor can we conclude that any assessment of time—such as three years free of substance abuse—violates the Eighth Amendment because years amount to a larger percentage of one's life the younger one is. The Eighth Amendment mandates that the sentencer be given discretion to consider youth in determining the sentence, not that youth automatically causes a reduction in the prison term. *See Jones*, 141 S Ct at 1320 (recognizing that "[different] sentencers presented with the same facts might decide that life without parole remains appropriate despite the defendant's youth"). Because, on their face, the JAM-II rules do not necessarily impose the functional equivalent of a life sentence, and do allow for the consideration of youth, they are facially valid. Individual offenders may identify constitutional concerns with the actual prison term imposed in their individual cases, but those challenges are for the day those terms are imposed.[3]

Petitioner next contends that the JAM-II rules violate ORS 161.620 because they do not provide for immediate parole eligibility. In relevant part, ORS 161.620 provides:

> "Notwithstanding any other provision of law, a sentence imposed upon any person waived [from the juvenile court] *** shall not include any sentence of death or life imprisonment without the possibility of release or parole nor imposition of any mandatory minimum sentence."

According to petitioner, this statute "requires immediate parole eligibility for remanded juveniles at the moment that the trial court imposed a sentence." However, the statute only "provides that no juvenile can be sentenced to death or true life *** [or] any statutorily required minimum sentence." *State ex rel Engweiler v. Felton*, 350 Or 592, 610, 260 P3d 448 (2011) (*Engweiler II*). The statute prohibits true life, life without the possibility of parole, and a *statutory* mandatory minimum. It does not require that the board rules

---

[3] Once a prison term is actually imposed, it will be possible for the reviewing court to determine whether age was impermissibly used as an aggravating factor, as petitioner contends.

mandate immediate parole eligibility. *Engweiler I*, 343 Or at 553 (explaining that a prison term imposed by the JAM-I rules is not a mandatory minimum sentence that violates ORS 161.620); *see also Engweiler II*, 350 Or at 620 ("ORS 161.620 is a limitation on the options available to the trial court in sentencing juvenile felony offenders in general, and specifically, juvenile aggravated murderers under the age of 17 at the time of their offense. That statute has no application to the authority of the board (a separate branch of government) to make parole release decisions for juvenile aggravated murderers."). Although the interaction of several statutes does require immediate parole *consideration*, *see Engweiler III*, 354 Or at 553, the JAM-II rules provide that.[4] Because the JAM-II rules do not (and cannot) impose a true life or statutory mandatory minimum, they do not facially violate ORS 161.620.

Finally, petitioner contends that the JAM-II rules violate the *ex post facto* provisions because they retroactively impose minimum incarceration terms where none previously existed and increase the amount of time that juveniles must serve before becoming eligible for release. As a rule challenge, in which we review only whether a rule is facially valid, this argument cannot succeed. Without an offender's prison term to review, we cannot evaluate whether the board's decision retroactively imposes a greater term than allowed at the time of the offender's crime. An individual can raise this challenge on administrative and judicial review of the board's determination, but not as a facial attack.

Petitioner's argument boils down to a concern that the JAM-II rules *may* affect juveniles in a way that illegally fails to consider their youth. The province of a rule challenge, however, is to invalidate rules that, on their face, *do* violate the law. *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992), *abrogated on other grounds by GTE Northwest, Inc. v. Public Utility Commission*, 321 Or 458, 900 P2d 495 (1995) (explaining that under ORS 183.400

---

[4] Petitioner also argues that it is "problematic according to ORS 161.620" that the matrix does not place sufficient weight on a juvenile's maturation. Although the statute prohibits the imposition of certain sentences for juveniles, it does not address weighing of matrix factors.

"the legality of any particular application of the rules is premature, and not subject to review"). Given the narrow scope of review of a rule challenge, petitioner's arguments do not provide a basis to invalidate the JAM-II rules. If petitioner's concerns manifest in an unconstitutional board action, an individual affected by the JAM-II rules can raise an as-applied challenge.

OAR 255-032-0005(4), (5) held valid.