Submitted August 7, reversed and remanded with instructions to vacate
peremptory writ of mandamus and dismiss relator's petition November 25, 2009

STATE ex rel Conrad R. ENGWEILER,
*Relator-Respondent,*

*v.*

Steven POWERS,
Chairperson of the Board of Parole
and Post-Prison Supervision,
*Defendant-Appellant.*

Marion County Circuit Court
07C18859; A139059

221 P3d 818

John Kroger, Attorney General, Rolf C. Moan, Acting Solicitor General, and Jeremy Rice, Assistant Attorney General, filed the brief for appellant.

Conrad R. Engweiler filed the respondent's brief *pro se*.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This is a mandamus action. ORS 34.105 to 34.240. Relator was convicted of aggravated murder and other crimes and, ultimately, sentenced to life in prison. He petitioned the Marion County Circuit Court for a peremptory writ directing defendant, the chair of the Board of Parole and Post-Prison Supervision (board), to hold a hearing and set his initial parole release date. The circuit court issued the writ, and the board appeals. We reverse and remand with instructions to vacate the writ and dismiss the petition.

## I. FACTS

The relevant facts are undisputed. In 1990, relator raped, sodomized, and murdered a 16-year-old female acquaintance. He was 15 years old at the time of the offense, but he was tried and convicted in adult court. *See former* ORS 419.533(1)(b) (1989), *renumbered as* ORS 419C.349(2)(a) (providing in part for waiver of juvenile court jurisdiction and remand to circuit court of juveniles aged 15 or over who commited aggravated murder).[1] He was sentenced to life in prison with a 30-year minimum.

Relator appealed, challenging the lawfulness of the sentence. This court concluded that ORS 161.620 (1989) prohibited the imposition of mandatory minimum sentences on offenders remanded from juvenile court. The court remanded relator's case to the trial court for resentencing. *State v. Engweiler*, 118 Or App 132, 846 P2d 1163, *rev den*, 317 Or 486 (1993) (*Engweiler I*). In 1994, relator was resentenced to life imprisonment with the possibility of parole.

In 1999, the board adopted new rules relating to parole of juvenile aggravated murderers. Later that year, in accordance with those new rules, the board conducted a prison term hearing for relator, set his prison term at 480 months, and set a date in 2029 for a "murder review hearing." *See* OAR 255-032-0005(4) (May 18, 1999) (juveniles who were under 17 years of age when they committed their crime, who were tried in adult court under ORS 419C.349, and who were

---

[1] Effective April 1, 1995, persons aged 15 through 17 who commit aggravated murder are automatically tried in adult court. ORS 137.707.

convicted of aggravated murder committed on or after November 1, 1989, and before April 1, 1995, shall receive a "prison term hearing" at which the board shall set an aggravated murder "review date * * * rather than a projected parole release date"); OAR 255-032-0011 (May 18, 1999) (setting out requirements for that type of hearing, including criteria for establishing the date of the offender's aggravated murder review hearing or, alternatively, for denying parole).

Relator sought judicial review of the board's 1999 decision, but the Oregon Supreme Court dismissed review on the ground that, under ORS 144.335 (1999), the board's decision was not subject to judicial review. *Engweiler v. Board of Parole*, 340 Or 361, 133 P3d 910 (2006) (*Engweiler II*).[2] The Supreme Court explained that, "to the extent that [relator] had (or continues to have) a right to enforce the board's obligation * * * to conduct a parole hearing and to set an initial [parole] release date," the "proper avenue for vindicating that right is to seek a writ of mandamus[.]" *Id.* at 369-70.

Relator did precisely that, initiating this mandamus action in the circuit court. Relator argued that the board was required to hold a hearing and set an initial parole release date within one year following his admission to the Department of Corrections (DOC). In support of his petition, relator relied on ORS 144.120(1)(a) (1989), which provided, in part, that, "[f]or those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the [Department of Corrections] institution."

The board responded that offenders sentenced to life imprisonment *for aggravated murder* are not entitled to a hearing or the establishment of an initial parole release date

---

[2] Relator has also sought, in an earlier mandamus proceeding, to have his sentence reduced by the application of earned time credits under ORS 421.121, and has sought relief from his sentence by way of a federal habeas corpus action. *See State ex rel Engweiler v. Cook*, 340 Or 373, 133 P3d 904 (2006) (*Engweiler III*) (concluding that, where relator did not yet have a specific "term of incarceration," he was not entitled to the application of earned time credits); *Engweiler v. Board of Parole*, 343 Or 536, 175 P3d 408 (2007) (*Engweiler IV*) (addressing questions certified to Oregon Supreme Court by United States District Court for the District of Oregon in relator's federal habeas corpus action).

under that statute. That is so, the board argued, because ORS 144.120(1)(a) was amended in 1991 to exclude offenders who were sentenced for murder or aggravated murder. Because relator was resentenced in 1994, the board argued, the amended version of the statute applied. Relator argued in turn that to apply the amended version of the statute to him would violate constitutional *ex post facto* prohibitions. The board rejoined that, because the amendments were procedural in nature, there is no constitutional impediment to applying them to relator. The trial court concluded that ORS 144.120(1)(a) (1989) applied to relator and issued a writ directing the board to hold a hearing and set an initial parole release date as provided therein.

## II. ANALYSIS

The board now appeals, arguing, as it did below, that ORS 144.120(1)(a) is a procedural statute that does not implicate *ex post facto* concerns, that it was amended in 1991 to exclude offenders sentenced for murder or aggravated murder, and that, accordingly, after relator was resentenced in 1994, he did not come within the ambit of that statute. *See Engweiler II*, 340 Or at 369 (noting that ORS 144.120 is a procedural statute and that neither party in the case had explained "why it necessarily is the case" that the 1989 version of the statute would continue to apply to offenders after the legislature amended it; declining to decide that issue).

The board also argues that, even assuming that ORS 144.120(1)(a) is substantive rather than procedural in nature, the 1989 version does not apply to relator because that statute is expressly qualified by a contemporaneous, related statute, ORS 144.110(2)(b) (1989), which provided that ORS 144.120 (1989) does not apply to offenders convicted of aggravated murder. The board concedes that it did not make that argument below but argues that, for purposes of construing a statute, this court is permitted—if not required—to consider relevant contextual statutes.

Relator responds that nothing in the text or history of the 1991 amendments to ORS 144.120(1)(a) (1989) suggests that the legislature intended them to have retroactive effect. Even if that were not the case, he contends, applying those amendments to him would violate state and federal

constitutional guarantees against *ex post facto* laws. As for the board's argument that ORS 144.120(1)(a) (1989) does not apply to him in the first place, relator argues that the argument is unpreserved.

For the reasons that follow, we conclude that preservation principles do not foreclose the board from relying on what is essentially context for the proper interpretation of ORS 144.120(1)(a) (1989). We further conclude that, on the merits, the board is correct that ORS 144.120(1)(a) (1989) does not apply to relator and does not authorize the trial court's issuance of a writ directing the board to hold a hearing and set an initial parole release date for him. Because we hold that the statute does not apply, it is not necessary to address the parties' arguments about whether the legislature intended the 1991 amendments to apply retroactively or whether their retroactive application to relator would run afoul of constitutional *ex post facto* prohibitions.

A. *Preservation of error*

◼    We begin with the parties' contentions about whether the board may rely on other statutes in arguing about the scope and application of ORS 144.120(1)(a) (1989). As we have noted, that statute provides, in part, that, "[f]or those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the [Department of Corrections] institution." At issue in this case is whether that statute applies to relator.

Before the trial court, the board argued that the statute does not apply to persons who have been convicted of, and sentenced for, aggravated murder. As we have noted, the board's reasoning in support of that argument was that ORS 144.120(1)(a) was amended in 1991 to say precisely that. On appeal, the board again argues that ORS 144.120(1)(a) (1989) does not apply to one convicted of, and sentenced for, aggravated murder. And it again argues that one reason for that contention is that the legislature amended the statute to say that in 1991. The preservation question arises out of the fact that the board now also contends that ORS 144.120(1)(a) (1989) does not apply to one convicted of, and sentenced for,

aggravated murder for a separate and independent reason, namely, the existence of a related statute, ORS 144.110(2)(b) (1989), which provided that "[n]otwithstanding the provisions of ORS 144.120, * * * [t]he board shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder" except as provided in a separate statute prescribing sentences for those convicted of that offense.

Whether the board is correct that ORS 144.110(2)(b) (1989) supplied an applicable exception to ORS 144.120 (1989) is not the issue, at least at this juncture. The question is whether the failure of the board to mention the former statute to the trial court precludes reliance on it on appeal. We answer that question in the negative.

■ Once the meaning and application of a statute have been put before us, we have an obligation to correctly construe and apply that statute. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (in construing a statute, reviewing court is responsible for identifying the correct interpretation, whether or not asserted by the parties); *Waldvogel v. Jones*, 196 Or App 446, 449, 103 P3d 124 (2004) ("Once the construction of the statute is before us * * * we have an obligation to arrive at the correct construction, regardless of the parties' arguments."). We are not constrained merely to choose from the arguments of the parties and decide which among them is the least incorrect.

■■ In deciding the meaning of a statute, we must consider, among other things, the relevant context. *Cf. Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole[.]"). The fact that one party or another has failed to identify any part of the relevant context of the statute at issue in no way precludes our consideration of that context. *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998) ("[T]he parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law.").

Directly on point in that regard is our opinion in *State v. Smith*, 184 Or App 118, 55 P3d 553 (2002). In that

case, the question was whether a skateboard was a "vehicle" within the meaning of the vehicle code, ORS 811.140. The defendant had argued to the trial court that his skateboard did not qualify because vehicles are something that one drives, and one does not drive a skateboard. The trial court was not persuaded and denied his motion for a judgment of acquittal. 184 Or App at 120. On appeal, the defendant renewed his argument that a skateboard is not a "vehicle" within the meaning of the statute, but added to his earlier arguments a new one, namely, that a related statute expressly exempts from the definition of "vehicle" devices other than bicycles that are exclusively human powered. *Id.* The state objected that the defendant had failed to preserve that argument. *Id.* at 120-21. We disagreed, noting our obligation to correctly construe the statute before us by examining, among other things, any relevant context. *Id.* at 121-23.

Precisely the same thing may be said in this case. The parties clearly put before the trial court the meaning of ORS 144.120(1)(a) (1989). More specifically, the parties put before the court the question whether that statute applies to persons convicted of aggravated murder and therefore requires the board to provide relator a hearing and an initial parole release date. We must determine the correct answer to that question, regardless of the analyses that the parties propose to us. In the process, we not only may, but must, examine any relevant context that bears on the meaning of that statute most likely intended by the legislature that enacted it into law. We reject relator's argument that the board may not rely on ORS 144.110 (1989).

B.  *The scope of ORS 144.120(1)(a) (1989)*

■     We turn then to the merits and the question whether ORS 144.120(1)(a) (1989) authorizes the trial court's issuance of the peremptory writ of mandamus. We review the issuance of a peremptory writ for errors of law. *State ex rel Engweiler v. Cook*, 340 Or 373, 133 P3d 904 (2006) (*Engweiler III*). Again, we seek to ascertain the meaning of the statute most likely intended by the legislature that enacted it into law, by applying the principles of statutory construction set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or

606, 610-12, 859 P2d 1143 (1993). In accordance with those principles, we examine the text of the statute in context along with any pertinent legislative history and, if necessary, relevant canons of construction.

■     We begin with the text of ORS 144.120(1)(a) (1989), which provided, in part:

> "Within six months of the admission of a prisoner to any Department of Corrections institution, with the exception of those prisoners sentenced to a term of imprisonment for life or for more than five years, the board shall conduct a parole hearing to interview the prisoner and set the initial date of release on parole * * *. For those prisoners sentenced to a term of imprisonment for more than five years but less than 15 years, the board shall conduct the parole hearing and set the initial date of release within eight months following admission of the prisoner to the institution. *For those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the institution.*"

(Emphasis added.)

■■     On the surface and in isolation, the emphasized portion of ORS 144.120(1)(a) (1989) appears to apply to relator. He is an offender who was "sentenced to a term of imprisonment for life." We do not construe statutes in isolation, however. Rather, they must be examined in context. *See, e.g., Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004) (ordinarily, the text of a statute "should not be read in isolation but must be considered in context"). A statute's "context" includes other provisions of the same or related statutes, *see, e.g., Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008) ("When we examine the text of the statute, we always do so in context, which includes, among other things, other provisions of the statute of which the disputed provision is a part."), that existed at the time of enactment and of which the enacting legislature presumably was aware, *Stull*, 326 Or at 79-80.

In this case, ORS 144.110 (1989) clearly is relevant context to ORS 144.120 (1989). It pertained to the same subject matter; indeed, it cross-referenced ORS 144.120. And it originally was enacted at the same time as ORS 144.120. Or Laws 1977, ch 372, §§ 4, 5.

ORS 144.110 (1989) provided, in part:

"(2) Notwithstanding the provisions of ORS 144.120 * * *:

"* * * * *

"(b) The board shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder * * *, except as provided in ORS 163.105."

On its face, ORS 144.110(2)(b) (1989) operated as an exception to ORS 144.120(1)(a) (1989). That is, after all, the function of a "notwithstanding" clause, *viz.*, to describe an exception to the statute to which it refers. *See Engweiler v. Board of Parole*, 343 Or 536, 544, 175 P3d 408 (2007) (*Engweiler IV*) (function of a "notwithstanding" clause is to operate as an exception to the provision or provisions of law referred to in the clause (citing *Severy v. Board of Parole*, 318 Or 172, 178, 864 P2d 368 (1993))). Moreover, on its face, the statute appears directly applicable to relator, who was convicted of aggravated murder.

Unfortunately, matters are not quite that simple. ORS 144.110(2)(b) (1989) provided that, for persons convicted of aggravated murder, release is governed by another statute, ORS 163.105 (1989). That statute required that, "[n]otwithstanding the provisions of ORS chapter 144," when a person is convicted of aggravated murder, that person must be sentenced to "death, life imprisonment without the possibility of release or parole or life imprisonment." ORS 163.105(1)(a) (1989). In the case of a person sentenced to life imprisonment, the statute required the trial court to order that the offender be "confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave[.]" ORS 163.105(1)(c) (1989). The statute then set out the process by which release decisions were to be made. First, the statute provided that "[a]t any time after 20 years from the date of imposition of a minimum

period of confinement," the board was required to hold a contested case-type hearing "to determine if the prisoner is likely to be rehabilitated within a reasonable period of time." ORS 163.105(2) (1989). Second, the statute provided that if, after hearing the evidence, the board answered that question in the affirmative, the board was required to enter an order to that effect; the order "convert[ed]" the terms of the offender's "confinement" to life imprisonment with the possibility of parole. ORS 163.105(3) (1989). Finally, the statute provided that, if the board denied such relief, the offender could petition for reconsideration of that request at two-year intervals. ORS 163.105(4) (1989).[3]

The problem arises in that parts of ORS 163.105 do not apply to offenders who committed aggravated murder

---

[3] ORS 163.105 (1989) provided, in part:

"Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:

"(1)(a) When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment without the possibility of release or parole or life imprisonment.

"* * * * *

"(c) If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to paragraph (c) of subsection (1) of this section, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(3) If, upon hearing all of the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition.

"(4) Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter."

when they were juveniles. Yet another statute, ORS 161.620 (1989), provided:

> "Notwithstanding any other provision of law, a sentence imposed upon any person remanded from the juvenile court under [*former*] ORS 419.533 [(1989)] shall not include any sentence of death or life imprisonment without the possibility of release or parole nor imposition of any mandatory minimum sentence except that a mandatory minimum sentence under [*former*] ORS 163.105(1)(c) [(1989)] shall be imposed where the person was 17 years of age at the time of the offense."

It was that statute that provided the basis for this court's determination in *Engweiler I* that relator's original sentence of life imprisonment with a 30-year minimum was unlawful. In this case, relator argues that a further effect of ORS 161.620 (1989) is to create an irreconcilable conflict between that statute and ORS 144.110 (1989) and the standards and procedures to which it refers in ORS 163.105 (1989). According to relator, ORS 161.620 (1989) is the more recent statute and, consequently, must prevail over the others, thus precluding the application of ORS 144.110 (1989).

The linchpin of relator's argument is the asserted irreconcilable conflict between ORS 161.620 (1989)—which precluded juvenile aggravated murderers from being sentenced to life with a 30-year minimum—and ORS 144.110 (1989), which provided that release of aggravated murderers is governed by ORS 163.105 (1989), which, in turn, according to relator, "operates with a built-in assumption" that persons sentenced for aggravated murder are subject to the 30-year minimum provided in ORS 163.105(1)(c) (1989). It stands to reason, relator suggests, that, if the "built-in assumption" of a 30-year minimum does not apply to juvenile aggravated murderers, the process set out in ORS 163.105(2) to (4) (1989)—which, in relator's view, flows from that assumption—cannot apply either.

We agree with relator that the fit between all the relevant statutes is not a comfortable one. *See Engweiler IV*, 343 Or at 543, 543 n 7 (noting that, "at least at first blush," the 1989 versions of ORS 144.110(2)(b), ORS 163.105(1), and ORS 161.620 were "potentially inconsistent"). Nevertheless, we conclude that he too quickly seizes on apparent tensions

between the statutes in reaching the conclusion that they irreconcilably conflict, ignoring the obligation of the courts to search for a construction that gives effect to all relevant provisions. *See* ORS 174.010 ("where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"); *Liles v. Damon Corp.*, 345 Or 420, 424, 198 P3d 926 (2008) (noting obligation of the courts "to give meaning to all parts of those statutes" in issue). Such a harmonizing construction is possible; the key, in our view, is discerning the difference between the authority of a court to impose a sentence and the authority of the board to implement it.

As we have noted, ORS 161.620 (1989) precluded the "imposition" on juvenile aggravated murderers of a 30-year "mandatory minimum sentence," that is, a 30-year term of confinement without possibility of parole as provided in ORS 163.105(1)(c). Ordinarily, the terms "imposition" and "mandatory minimum sentence" refer to those aspects of a criminal offender's sanction that are effectuated by a sentencing court, as opposed to those aspects of the sanction—such as parole release—that are implemented by an administrative agency such as the board. *See Engweiler IV*, 343 Or at 552-53 (explaining that the phrase "mandatory minimum sentence" in ORS 161.620 (1989) "mean[s] a minimum period of incarceration that a trial court, by statute, is required to impose as part of an offender's sentence" (citing *State v. Jones*, 315 Or 225, 844 P2d 188 (1992))); *see also Gaynor v. Board of Parole*, 165 Or App 609, 614-15, 996 P2d 1020 (2000) (distinguishing between authority of sentencing court to impose sentence and authority of Board of Parole and Post-Prison Supervision under ORS chapter 144 to implement sentence).

ORS 163.105 (1989) itself expressly recognizes that distinction by prohibiting the board and DOC from paroling or releasing (for example, on work release or other forms of temporary leave) an offender sentenced by a trial court to life without possibility of parole, ORS 163.105(1)(b), and by conferring on the board the authority to carry out procedures applicable to persons sentenced to life with the possibility of parole. Indeed, in *Engweiler IV*, in answering a certified question from the federal district court—whether the 1989

versions of ORS 144.110(2)(b), ORS 163.105(1), and ORS 161.620 "combined to create a situation in which certain juveniles * * * convicted of aggravated murder were not entitled to the possibility of parole," 343 Or at 543 (footnote omitted)—the Supreme Court limited its analysis entirely to the effect of ORS 161.620 (1989) on subsection (1) of ORS 163.105 (1989) and did not so much as mention any other subsections of the latter statute.[4]

Thus, when ORS 161.620 (1989) stated that "the sentence imposed" upon a juvenile convicted of aggravated murder may not include any mandatory minimum sentence, that directive precluded a *sentencing court* from imposing an aspect of the *sentence* set out in subsection (1)(c) of ORS 163.105 (1989). It said nothing, however, about the authority of *the board* to implement the remaining portions of the statute concerning release decisions, as set out in ORS 163.105(2) to (4) (1989). *Cf. State v. Walker*, 192 Or App 535, 547, 86 P3d 690, *rev den*, 337 Or 327 (2004) (where numerous statutes demonstrated that the legislature knew how to refer to a particular administrative agency, the fact that it did not do so in the statute at issue made it unlikely that it intended the latter statute to encompass that agency). In other words, merely because *a court* may not impose a particular sentence mentioned in ORS 163.105(1) does not necessarily require the conclusion that *the board* does not remain subject to the requirements of the balance of the statute with respect to juvenile aggravated murderers.

Our conclusion in that regard answers relator's argument that, because ORS 144.110(1)(b) and ORS 163.105 were already in effect at the time that the legislature enacted the proscription against mandatory minimum sentences in ORS 161.620 and the directive specifically relating to offenders serving life sentences in ORS 144.120(1)(a), *see* Or Laws

---

[4] A portion of the Supreme Court's analysis is exemplary:

"[T]he notwithstanding clause [in ORS 161.620 (1989)] made it irrelevant that ORS 144.110(2)(b) (1989) and *ORS 163.105(1)* (1989) each mandated a minimum sentence of 30 years without the possibility of parole for any person convicted of aggravated murder and made no exception for persons who were juveniles under the age of 17 when they committed their crime."

*Engweiler IV*, 343 Or at 544 (emphasis added).

1987, ch 881, § 91, and because the two more recent provisions are in irreconcilable conflict with the earlier ones, the more recent statutes must prevail. Again, because we understand ORS 161.620 to prohibit only mandatory minimum sentences imposed by a trial court, the statutes are not in conflict and, to the extent described, each can be given effect.

Because we have concluded that there is no conflict between ORS 161.620 (1989) and ORS 163.105(2) to (4) (1989), it also follows that there is no impediment to giving effect, in regard to juvenile aggravated murderers, to the directive to *the board* in ORS 144.110(2)(b) (1989) that it shall not release on parole offenders who have been convicted of aggravated murder, "except as provided in ORS 163.105."

■ Relator insists that, to the extent that ORS 161.620 (1989) prohibited imposition of a minimum sentence—thereby resulting in an initial sentence for a juvenile aggravated murderer of life with the possibility of parole—the portion of ORS 163.105(3) (1989) relating to conversion of an aggravated murderer's sentence to life with the possibility of parole is rendered meaningless surplusage. That is so, he contends, because juvenile aggravated murderers will already be subject to that sentence. We disagree. An assumption implicit in relator's argument is that the existence of some measure of redundancy in one or more statutes necessarily establishes an irreconcilable conflict between them. The assumption simply is not consistent with relevant case law. *See, e.g., Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 194-95, 211 P3d 297 (2009) (noting that redundancy is a fairly common feature of legislative drafting). Particularly—as in this case—when the alternative to accepting a measure of redundancy in legislation is to hold that some portion of a statute simply does not mean what it says, the courts routinely hold in favor of allowing for the redundancy. *See, e.g., S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 630-31, 872 P2d 1 (1994) (when presented with the choice of an interpretation that rendered other enactments redundant and an interpretation that required the court to, in effect, nullify statutory wording, court chose the former).

In this case, under subsection (2) of ORS 163.105 (1989), the "sole issue" in an aggravated murder review hearing is "whether or not the prisoner is likely to be rehabilitated within a reasonable period of time." Under subsection (3), if the board finds that the offender has met that standard, it enters an order to that effect "and *the order shall convert* the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release." (Emphasis added.) We have no difficulty in concluding that the focus of ORS 163.105(2) and (3) (1989) is the board's obligation to determine the offender's rehabilitation status and that any superfluity, when applied to juvenile aggravated murderers, of the attendant conversion of the terms of the offender's confinement is insufficient to nullify that purpose and the relevant procedures. We apply the same reasoning to any potential superfluity of the requirement in ORS 163.105(2) (1989) that an offender wait 20 years before first petitioning for a review hearing; moreover, to the extent that that requirement is superfluous in regard to juvenile aggravated murderers, we assume that the board will apply appropriate criteria in determining the proper timing of rehabilitation hearings for those offenders. *See* OAR 255-032-0005(4) (May 13, 2003) (providing that board shall establish an aggravated murder review hearing date for a juvenile aggravated murderer in a manner consistent with the criteria set out in OAR 255-032-0011).

Relator also argues that, if we are correct that the portion of ORS 144.120(1)(a) (1989) referring to offenders "sentenced to a term of imprisonment for life" does not apply to juvenile aggravated murderers, it does not apply to anyone because, according to relator, for crimes committed on or after November 1, 1989, only juveniles received life sentences. *See State v. Morgan*, 316 Or 553, 559-60, 856 P2d 612 (1993) (enactment of sentencing guidelines impliedly repealed indeterminate sentence of life in prison, except as a departure sentence). He again urges us not to interpret the statute to include "meaningless surplusage." Relator is mistaken about the applicability of that portion of ORS 144.120(2)(a) (1989), however. Even assuming that ORS 144.120 is not merely a procedural statute, where that provision originally went into effect on September 27, 1987, it

continued to apply, at a minimum, to offenders convicted of murder and aggravated murder committed on or after that date and before November 1, 1989. Accordingly, that argument does not assist him.

■ Finally, relator contends that reading ORS 144.110(2)(b) (1989) and ORS 163.105(2) to (4) as applicable in his case is erroneous because it runs afoul of the rule of statutory interpretation that courts generally construe statutes to avoid constitutional difficulties. According to relator, the board's application of those statutes to him has violated the prohibition against disproportionate sentences in Article I, section 16, of the Oregon Constitution. He relies on the facts that he was 15 years old when he committed his crime, that the board has established a 40-year prison term that he must serve before receiving a murder review hearing, and that an adult who committed aggravated murder during the same period was eligible for such a hearing after 20 years. ORS 163.105 (1989).

Article I, section 16, provides, in part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportional to the offense." Under Article I, section 16, a criminal offender may challenge a sentence as disproportionate on its face, or as applied in a particular case. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 612, 932 P2d 1145, *cert den*, 522 US 994 (1997). In *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009), the court established the proper analysis for determining whether imposition of a sentence in a particular case violates Article I, section 16. The court first noted "the central role that the legislature plays in establishing penalties for crimes" and stated that "[i]t is not the role of this court to second-guess the legislature's determination of the penalty or range of penalties for a crime." The court also reiterated that the traditional test of proportionality is whether imposition of the prescribed sentence would "shock the moral sense" of reasonable people. *Id.* at 58. The court then identified various factors that are relevant to that inquiry, including the relationship between the penalty and the offense, the relationship between the penalty and the penalties for related offenses, and the defendant's criminal history—that is, the defendant's recidivism, if any,

which traditionally has been a relevant factor in establishing criminal penalties. *Id.* at 58-67.

Applying its methodology to the two consolidated cases before it—in each of which the trial court had declined to impose a statutory minimum sentence of 75 months' imprisonment on the defendant's conviction for sexual abuse in the first degree—the court concluded that the cases presented the "rare circumstance in which the statutorily prescribed penalty is so disproportionate to the offenses committed by these defendants that it 'shocks the moral sense' of reasonable people." *Id.* at 67-79. It therefore affirmed the lesser sentences imposed by the trial court. *Id.* at 80.

As noted, in this case, relator does not challenge, under Article I, section 16, the legislatively prescribed life sentence imposed by the trial court on his aggravated murder conviction under ORS 163.105(1)(c). Rather, in support of his argument that ORS 144.110(2)(b) (1989) and ORS 163.105(2) to (4) (1989) do not apply to him, he argues that to conclude otherwise would result in a violation of his rights under Article I, section 16, based on the board's establishment, under those statutes, of a 480-month prison term that he must serve before receiving a murder review hearing.

We have not identified a decision of the Oregon Supreme Court analyzing, for Article I, section 16, purposes, a board-established prison term. To the contrary, that court's cases suggest that board-established prison terms are not subject to such an analysis. For example, in *State v. Turner*, 296 Or 451, 676 P2d 873 (1984), the defendant was convicted of various crimes including attempted rape in the first degree. Having determined that the defendant was a dangerous offender, ORS 161.725, the trial court sentenced him on that conviction to a 30-year indeterminate maximum prison sentence. Within that maximum sentence, the trial court also imposed, pursuant to ORS 144.110(1), a 15-year "judicial" minimum prison term that the defendant was required to serve; the minimum prison term was, however, subject to being overridden by the board. *Id.* at 453.

As pertinent here, the defendant argued that, "as a practical matter," even persons sentenced to life imprisonment may "be paroled in less time than is set for a minimum

term for a less serious crime" and that his 15-year minimum sentence therefore violated Article I, section 16. *Id.* at 455-57. The court rejected that argument, stating:

> "We do not choose to speculate what the present or some future Parole Board might do in setting parole release dates for prisoners. We examine only the sentences as imposed by the trial judge. A sentence of imprisonment for the remainder of a person's life for murder is greater than any maximum or minimum statutory term authorized by the Oregon legislature for any less severe crime. The minimum sentences imposed on this defendant under ORS 144.110(1) are not disproportionate."

*Id.* at 457.

Thus, in considering the constitutionality, under Article I, section 16, of a court-imposed minimum term of confinement, the court declined to compare that term to prison terms that the board might (or might not) establish for offenders who did not receive court-imposed minimum terms. *See also State v. Wheeler*, 343 Or 652, 669-74, 175 P3d 438 (2007) (construing Article I, section 16; repeatedly noting legislature's authority to establish sentences for crimes, including enhanced sentences for recidivist conduct; determining that the legislative enactment of particular penalties is "an external source of law" that assists in determining whether the penalties would "shock the moral sense of reasonable people"); *State v. Ferman-Velasco*, 333 Or 422, 428-32, 41 P3d 404 (2002) (for purposes of Article I, section 16, proportionality analysis, Measure 11 is not inconsistent with legislature's sentencing guidelines crime seriousness classifications, but rather represents most recent legislative directive pertaining to relative seriousness of relevant crimes); *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981) (comparing statutorily prescribed minimum sentences to be imposed by a trial court for, respectively, murder under ORS 163.115 and aggravated murder under ORS 163.095; determining that greater statutory minimum for murder was disproportionate to lesser statutory minimums for aggravated murder; in making determination, court neither mentioned nor considered effect of board's authority to release offenders on parole after service of minimum term); *Cannon v. Gladden*, 203 Or

629, 281 P2d 233 (1955) (comparing maximum indeterminate sentences for rape and assault with intent to commit rape, without reference to board-established prison terms).

This court also has declined to decide the constitutionality, under Article I, section 16, of board-established prison terms. For example, in *Woolstrum v. Board of Parole*, 89 Or App 600, 750 P2d 509, *rev den*, 305 Or 672, *cert den*, 488 US 861 (1988), we rejected a petitioner's challenge on that basis to the board's order denying him parole. Noting that the petitioner relied on *Shumway*, we explained that that case "involved challenges to criminal sentences" and that, in the judicial review proceeding before it, "a court's sentence is not at issue. The only issue is what part of the sentence will have to be served." *Id.* at 603. We further noted that, even if the proportionality test in *Shumway* applied to the exercise of the board's discretion in setting a prison term—which we expressly declined to decide—the prison term set by the board in that case did not shock the moral sense of all reasonable persons. *Id.* at 603-04; *see also, e.g.*, *Quinn v. Board of Parole*, 229 Or App 234, 210 P3d 944 (2009) (rejecting without discussion the petitioner's challenge under Article I, section 16, and other constitutional provisions to board rule authorizing board to deny parole rather than set a parole release date).[5]

Finally, to the extent that the proper understanding and application of Article I, section 16, is based in part on a recognition of the legislature's plenary authority in regard to establishing the proper penalties for crimes, it is significant that, although the legislature has precluded trial courts from imposing mandatory minimum sentences on offenders remanded from juvenile court, it has not enacted any provisions specifically relating to the board's authority to establish prison terms for those same offenders.

---

[5] *State v. McLain*, 158 Or App 419, 974 P2d 727 (1999), is not to the contrary. In that case, we concluded that the defendant's life sentence for murder under ORS 163.115 violated Article I, section 16, because no statute conferred authority on the board to release him on parole, whereas the board was authorized under ORS 163.105 to release on parole offenders sentenced to life with the possibility of parole for aggravated murder, a more serious offense. Although aspects of the board's authority were at issue in that case, the duration of any prison term established by the board was not; rather, the case concerned the board's lack of authority to establish any prison term at all.

For all of those reasons, we reject relator's argument that his board-established prison term violates Article I, section 16. It follows that Article I, section 16, does not preclude us from determining that ORS 144.110(2)(b) (1989) and ORS 163.105(2) to (4) (1989) apply to relator.[6]

We reject without discussion relator's other arguments relating to the meaning and applicability of the relevant statutes.[7]

Having determined, for all of the above reasons, that ORS 144.110(2)(b) (1989), ORS 163.105(2) to (4) (1989), and ORS 161.620 (1989) properly can be applied to juvenile aggravated murderers such as relator, it necessarily follows that, as expressly provided in ORS 144.110(2)(b) (1989), ORS 144.120(1)(a) (1989) does not apply to him. The circuit court therefore erred in concluding otherwise and in ordering the board to afford him a hearing under that statute.

In light of our disposition of this matter under the statutes in effect in 1989, we need not determine whether, as

---

[6] We emphasize that we consider only relator's argument that ORS 144.110(2)(b) and ORS 163.105(2) to (4) (1989) should be interpreted as not applying to him because the 40-year prison term that the board has established pursuant to those provisions violates Article I, section 16; as discussed above, we reject that argument. Again, the issue in this case is whether the trial court erred in ordering the board to provide a hearing to relator pursuant to ORS 144.120 (1989). We express no opinion as to the proper interpretation of ORS 163.105(2) (1989) in regard to the timing of the murder review hearing that, we have concluded, applies to relator.

[7] Relator has requested that this court take judicial notice of a judgment of stipulation and related documents in a mandamus action against the board by an offender convicted of murder, ORS 163.115, committed in August 1991, when the offender was 16 years old. In the stipulated judgment, the parties—the offender and the board—agree that, upon issuance of the appellate judgment in the offender's direct appeal, having the effect of affirming the offender's conviction for murder, the board will conduct a parole hearing and set the offender's initial release date pursuant to ORS 144.120 (1989) and the version of OAR 255-035-0013 in effect on November 1, 1989. Relator argues that the submitted documents demonstrate that OAR 255-035-0013 "is a rule that could be used to conduct the hearing and set the initial [parole] release date pursuant to ORS 144.120 (1989)" for relator, who, like the offender subject to the stipulated judgment, committed his crime as a juvenile on or after November 1, 1989. As discussed above, however, we conclude that ORS 144.120 (1989) does not apply to relator, who, in crucial contrast to the offender who is subject to the stipulated judgment, was convicted of aggravated murder. Accordingly, the submitted documents are both irrelevant to relator's case and, in light of our decision in his case, moot. We therefore deny the motion.

the board also argues, ORS 144.120(1)(a) is a procedural statute and that, accordingly, the 1991 version of that statute—which expressly excludes offenders convicted of aggravated murder—properly can be applied to relator.

Reversed and remanded with instructions to vacate peremptory writ of mandamus and dismiss relator's petition.