Submitted August 7, 2009, OAR 255-032-0005 (May 18, 1999), OAR 255-032-0010 (May 18, 1999), OAR 255-032-0011 (May 18, 1999), OAR 255-032-0015 (May 18, 1999), OAR 255-032-0020 (May 18, 1999), and Exhibits P-I, P-II, and P-III (May 18, 1999) held valid January 6, petition for review allowed July 8, 2010 (348 Or 523)

# SHANE I. SOPHER,
*Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A128108

225 P3d 836

Shane I. Sopher filed the briefs *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner challenges the validity of several provisions of the so-called "juvenile aggravated murder" rules (the JAM rules), OAR 255-032-0005, OAR 255-032-0010, OAR 255-032-0011, OAR 255-032-0015, OAR 255-032-0020, and Exhibits P-I, P-II, and P-III (all promulgated or amended May 18, 1999). *See* ORS 183.400(4) (providing that this court shall declare a rule invalid if it violates constitutional provisions or exceeds the agency's statutory authority). Those rules were promulgated by respondent Board of Parole and Post-Prison Supervision (the board) to establish the murder review hearing date for certain juveniles under the age of 17 who committed aggravated murder after October 31, 1989, and before April 1, 1995 (juvenile aggravated murderers). Petitioner contends that the rules exceed the board's statutory authority and violate several constitutional provisions in myriad ways. We reject all but one of those contentions without discussion and write only to address petitioner's contention that the pertinent rules, including OAR 255-032-0005(4) (May 18, 1999), deprive juvenile aggravated murderers of their purported right to immediate parole eligibility under the statutory standard in ORS 161.620 (1994).[1] In light of *State ex rel Engweiler v. Powers*, 232 Or App 214, 221 P3d

---

[1] Quoting *Engweiler v. Board of Parole*, 343 Or 536, 548 n 13, 175 P3d 408 (2007) (*Engweiler I*), petitioner asserts that, when the board promulgated the JAM rules, it " 'expressly relied on the then current versions of ORS 144.110(2)(b)[ and] ORS 163.105(1) * * * (*i.e.*, the 1997 versions of those statutes); the board also relied on the 1994 version of ORS 161.620.' " We understand petitioner's rule challenge to focus on those versions of the pertinent statutes. ORS 183.400(3) (providing, in part, that judicial review of a rule is limited to an examination of "[t]he rule under review" and "[t]he statutory provisions authorizing the rule"). Accordingly, except as noted, throughout this opinion, our references to ORS 144.110(2)(b) and ORS 163.105 are to the 1997 versions of those statutes and our references to ORS 161.620 are to the 1994 version of that statute.

Further, we note that, in resolving this rule challenge, we rely on *Engweiler I* and our recent decision in *State ex rel Engweiler v. Powers*, 232 Or App 214, 221 P3d 818 (2009) (*Engweiler II*). In those decisions, the Supreme Court's and our analyses focused on the 1989 versions of the pertinent statutes. *See, e.g., Engweiler I*, 343 Or at 543 n 7 (noting that its analysis would focus on the 1989 versions of the pertinent statutes because the substantive provisions of those statutes had not changed in any significant way from February 1990 to January 1995). Nonetheless, because the 1994 and 1997 versions of the statutes have not been amended since 1989 in ways that are pertinent to the issues presented here, the decisions in *Engweiler I* and *Engweiler II* play a pivotal role in our analysis of this rule challenge.

818 (2009) (*Engweiler II*), we reject that challenge as well and, consequently, hold that the rules are valid.

As background, "[p]etitioner is in prison serving a life sentence for an aggravated murder that he committed in 1992, when he was under 17 years of age." *Sopher v. Board of Parole*, 197 Or App 118, 119, 103 P3d 683 (2005), *rev den* (June 13, 2006). When he committed that crime, the board's existing rules did not provide "procedural or substantive mechanisms to determine whether and when to parole juvenile aggravated murderers." *Engweiler v. Board of Parole*, 343 Or 536, 546, 175 P3d 408 (2007) (*Engweiler I*).

In 1999, the board filled that void by promulgating the JAM rules—that is, new rules promulgated as part of Oregon Administrative Rules, chapter 255, "division 32 to establish procedures and standards by which the board would consider whether and when to grant parole to juvenile aggravated murderers." *Id.* at 542. As the Supreme Court summarized,

"[i]n adopting the JAM rules, the board amended some of the preexisting division 32 rules so that they govern 'adult' offenders only, and also added new provisions to address juvenile offenders specifically. As pertinent here, the JAM rules require the board to hold an initial 'prison term hearing' for juveniles convicted of murder who were under age 17 at the time of the offense. OAR 255-032-0005(4) (1999). At that hearing, the board sets 'a review date * * * rather than a projected parole release date.' *Id.* Alternatively, the board may 'deny parole' altogether. OAR 255-032-0011(2) (1999). If the board opts to set a review date, it does so based on a parole release matrix that it adopted specifically for juvenile aggravated murderers who are eligible for parole consideration. *Id.* (cross-referencing Exhibit Pt-III). Essentially, that matrix establishes ranges of time periods that dictate whether and when a juvenile aggravated murderer will be reviewed for parole eligibility and will receive a parole release date. At the low end, the matrix can result in a review date between 240 and 300 months. *Id.* At the high end, it can result in a 'life' term, which is a denial of parole. *Id.* The review date then triggers a schedule for further board review of the inmate's institutional conduct and rehabilitation efforts, after which the board may establish a parole release date under the matrix or may set another

review date at which it will further review the inmate's conduct and rehabilitation efforts. OAR 255-032-0011(6) - (7) (1999); *see also State ex rel Engweiler* [*v. Cook*], 340 Or [373,] 383[, 133 P3d 904 (2006)] (so concluding). If the board denies parole, the inmate is not totally foreclosed from future parole consideration. Rather, after 480 months, the inmate may petition the board for further review, and then may continue to do so periodically. OAR 255-032-0011(5), (7) (1999)."

*Engweiler I*, 343 Or at 549 (footnote omitted; omission in original).

After promulgation of the JAM rules, "[t]he board held a prison term hearing and, pursuant to OAR 255-032-0005(4), established a prison term for petitioner and a review date. In particular, the board's order established a prison term of 400 months and a murder 'review date' of November 27, 2025." *Sopher*, 197 Or App at 119.

Petitioner's present rule challenge is predicated on ORS 161.620, which provided:

"Notwithstanding any other provision of law, a sentence imposed upon any person waived from the juvenile court * * * shall not include any sentence of death or life imprisonment without the possibility of release or parole nor imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105(1)(c) shall be imposed where the person was 17 years of age at the time of the offense."

According to petitioner, "[t]he JAM rules exceed the statutory authority of the Board embodied within ORS 161.620" by "implementing the parole release policy" in ORS 144.110(2)(b)[2] and ORS 163.105(1)[3]—that is, "the JAM rules

---

[2] ORS 144.110(2) provided, in part:

"Notwithstanding the provisions of ORS 144.120 and 144.780:

"* * * * *

"(b) The board shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder under the provisions of ORS 163.095, except as provided in ORS 163.105."

[3] ORS 163.105 provided, in part:

"Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:

"(1)(a) Except as otherwise provided in ORS 137.700, when a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant

impermissibly deprive juveniles of their statutorily man-
dated immediate parole or release eligibility by requiring
that they complete a[n] 'intermediate review process' before
the Board considers granting them the possibility of parole or
release eligibility."

The legal premise underlying petitioner's argument
is that, given the dictates of ORS 161.620, the board's JAM
rules cannot also implement the standards and procedures
concerning parole—that is, the "intermediate review
process"—expressed in ORS 163.105(2) to (4) and ORS
144.110(2)(b). We recently rejected that premise in *Engweiler
II*.

In that case, the relator committed aggravated
murder in 1990 when he was 15 years old. He was ultimately

---

shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment with-
out the possibility of release or parole or life imprisonment.

"* * * * *

"(c) If sentenced to life imprisonment, the court shall order that the defen-
dant shall be confined for a minimum of 30 years without possibility of parole,
release on work release or any form of temporary leave or employment at a for-
est or work camp.

"(2) At any time after 25 years from the date of imposition of a minimum
period of confinement pursuant to subsection (1)(c) of this section, the State
Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so
confined, shall hold a hearing to determine if the prisoner is likely to be reha-
bilitated within a reasonable period of time. The sole issue shall be whether or
not the prisoner is likely to be rehabilitated within a reasonable period of time.
The proceeding shall be conducted in the manner prescribed for a contested
case hearing under ORS 183.310 to 183.550 except that:

"(a) The prisoner shall have the burden of proving by a preponderance of
the evidence the likelihood of rehabilitation within a reasonable period of time;
and

"(b) The prisoner shall have the right, if the prisoner is without sufficient
funds to employ an attorney, to be represented by legal counsel, appointed by
the board, at board expense.

"(3) If, upon hearing all of the evidence, the board, upon a unanimous vote
of all of its members, finds that the prisoner is capable of rehabilitation and
that the terms of the prisoner's confinement should be changed to life impris-
onment with the possibility of parole, or work release, it shall enter an order to
that effect and the order shall convert the terms of the prisoner's confinement
to life imprisonment with the possibility of parole or work release. Otherwise
the board shall deny the relief sought in the petition.

"(4) Not less than two years after the denial of the relief sought in a peti-
tion under this section, the prisoner may petition again for a change in the
terms of confinement. Further petitions for a change may be filed at intervals
of not less than two years thereafter."

sentenced to life imprisonment with the possibility of parole. After promulgation of the JAM rules in 1999, the board conducted a prison term hearing and set his prison term at 480 months and a murder review hearing date in 2029. Eventually, the relator sought a writ of mandamus, arguing that, pursuant to ORS 144.120(1)(a) (1989),[4] "the board was required to hold a hearing and set an initial parole release date within one year following his admission to the Department of Corrections * * *." *Engweiler II*, 232 Or App at 217. The trial court agreed with the relator and concluded that the board was required to hold a hearing and to set an initial parole release date.

The board's chairperson appealed. The relator's position on appeal, as pertinent here, was predicated on the proposition that ORS 161.620 (1989) created "an irreconcilable conflict between that statute and ORS 144.110 (1989) and the standards and procedures to which it refers in ORS 163.105 (1989)." *Engweiler II*, 232 Or App at 225. More specifically, we explained that

"[t]he linchpin of relator's argument is the asserted irreconcilable conflict between ORS 161.620 (1989)—which precluded juvenile aggravated murderers from being sentenced to life with a 30-year minimum—and ORS 144.110 (1989), which provided that release of aggravated murderers is governed by ORS 163.105 (1989), which, in turn, according to relator, 'operates with a built-in assumption' that persons sentenced for aggravated murder are subject to the 30-year minimum provided in ORS 163.105(1)(c) (1989). It stands to reason, relator suggests, that, if the 'built-in assumption' of a 30-year minimum does not apply to juvenile aggravated murderers, the process set out in

---

[4] ORS 144.120(1)(a) (1989) provided, in part, that, "[f]or those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the [Department of Corrections (DOC)] institution."

ORS 144.120(1)(a) was amended in 1991 to exclude those sentenced for aggravated murder from the requirement that the board set an initial release date within a year of the prisoner's admission to a DOC institution. Here, unlike in *Engweiler II*, because petitioner committed his crime in 1992 after the effective date of the 1991 amendment, the 1991 version of the statute applied to him and the board was not required to set an initial release date within the one-year period described in the earlier version of the statute.

ORS 163.105(2) to (4) (1989)—which, in relator's view, flows from that assumption—cannot apply either."

*Engweiler II*, 232 Or App at 225.

After comprehensively examining the statutory scheme that applied to juvenile aggravated murderers, we held that,

"when ORS 161.620 (1989) stated that 'the sentence imposed' upon a juvenile convicted of aggravated murder may not include any mandatory minimum sentence, that directive precluded a *sentencing court* from imposing an aspect of the *sentence* set out in subsection (1)(c) of ORS 163.105 (1989). It said nothing, however, about the authority of *the board* to implement the remaining portions of the statute concerning release decisions, as set out in ORS 163.105(2) to (4) (1989). * * * In other words, merely because *a court* may not impose a particular sentence mentioned in ORS 163.105(1) [(1989)] does not necessarily require the conclusion that *the board* does not remain subject to the requirements of the balance of the statute with respect to juvenile aggravated murderers."

*Id.* at 227 (emphasis in original). In other words, we held that, because "ORS 144.110(2)(b) (1989), ORS 163.105(2) to (4) (1989), and ORS 161.620 (1989) properly can be applied to juvenile aggravated murderers such as relator, it necessarily follows that, as expressly provided in ORS 144.110(2)(b) (1989), ORS 144.120(1)(a) (1989) does not apply to him." *Engweiler II*, 232 Or App at 234. Thus, we determined that the trial court in *Engweiler II* had erred in concluding otherwise. Accordingly, we reversed and remanded with instructions to vacate the peremptory writ of mandamus and dismiss the relator's petition.

Here, as previously described, petitioner contends that the JAM rules deprive juveniles of their immediate parole or release eligibility by requiring that they complete an intermediate review process and, as a consequence, the rules exceed the board's statutory authority under ORS 161.620. The legal premise underlying petitioner's contention is that the board's rules cannot, consistently with the dictates of ORS 161.620, implement the standards and procedures established in ORS 144.110(2)(b) and ORS 163.105(2)

to (4). In *Engweiler II*, we held that, consistently with ORS 161.620, juvenile aggravated murderers are subject to the standards and procedures described in ORS 144.110(2)(b) and ORS 163.105(2) to (4). Accordingly, because we rejected the legal premise underlying petitioner's rule challenge in *Engweiler II*, we reject petitioner's contention that the JAM rules exceed the board's statutory authority under ORS 161.620.[5]

In sum, we reject the specific challenges to the JAM rules that petitioner raised in this proceeding. Accordingly, we hold that the rules are valid.

OAR 255-032-0005 (May 18, 1999), OAR 255-032-0010 (May 18, 1999), OAR 255-032-0011 (May 18, 1999), OAR 255-032-0015 (May 18, 1999), OAR 255-032-0020 (May 18, 1999), and Exhibits P-I, P-II, and P-III (May 18, 1999) held valid.

---

[5] We note, parenthetically, that petitioner's brief includes examples of ways in which petitioner believes that the JAM rules create more burdensome release standards for juvenile aggravated murderers than what ORS 163.105 allowed. However, petitioner did not alternatively contend that, even if ORS 144.110(2)(b) and ORS 163.105(2) to (4) applied to juvenile aggravated murderers, OAR 255-032-0005(4), or the JAM rules generally, are invalid because they exceed the board's statutory authority in ORS 163.105(2) to (4). Accordingly, we do not address that issue. *See Beaver Creek Coop. Telephone Co. v. PUC (A109890)*, 182 Or App 559, 575 n 15, 50 P3d 1231 (2002) (declining to speculate on the "abstract merit[s]" of an argument concerning the invalidity of a rule that was not raised in the ORS 183.400 proceeding in this court). *Accord Engweiler II*, 232 Or App at 234 n 6 (expressing "no opinion as to the proper interpretation of ORS 163.105(2) (1989) in regard to the timing of the murder review hearing that, we have concluded, applies to relator"); *id.* at 229 (noting that "to the extent that [the requirement in ORS 163.105(2) (1989) that an offender wait 20 years before first petitioning for a review hearing] is superfluous in regard to juvenile aggravated murderers, we assume that the board will apply appropriate criteria in determining the proper timing of rehabilitation hearings for those offenders").