Argued and submitted June 12, 2020, affirmed October 13, 2021

PATRICK HARNED,
*Petitioner-Appellant,*

*v.*

Brigitte AMSBERRY,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
17CV00394; A168535

499 P3d 825

Petitioner was convicted of aggravated murder for a crime he committed at 16 years old and he was sentenced to life without the possibility of parole. In this post-conviction relief proceeding, he assigns error to the post-conviction court's denial of post-conviction relief. He contends that his sentence violated the Eighth Amendment to the United States Constitution because the sentencing court failed to comply with the procedural sentencing requirements of *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012). *Held*: In light of the United States Supreme Court's recent decision construing *Miller*'s holding and accompanying requirements, *Jones v. Mississippi*, ___ US ___, 141 S Ct 1307, 209 L Ed 2d 390 (2021), petitioner's sentencing complied with the requirements of *Miller*. In accordance with *Jones*, the statutory scheme allowed the sentencing court to consider petitioner's youth and impose an alternative sentence to life without parole, and the sentencing court was not required to make express or implied factual findings of irreparable corruption. Further, there was evidence in the record that the sentencing court considered petitioner's youth as a mitigating factor. After *Jones*, no more was required to satisfy *Miller*.

Affirmed.

Dale Penn, Senior Judge.

Lindsey Burrows argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Jonathan N. Schildt argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

For a crime he committed at 16 years old, petitioner was convicted of aggravated murder. He was then sentenced to life in prison without the possibility of parole. In this post-conviction relief proceeding, he contends that his sentence violated the Eighth Amendment to the United States Constitution because the sentencing court failed to comply with *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012), which prohibited mandatory life-without-parole sentences for juveniles and established that a sentencer must consider a juvenile homicide offender's youth before imposing a life-without-parole sentence. In light of the United States Supreme Court's recent interpretation of *Miller* in *Jones v. Mississippi*, ___ US ___, 141 S Ct 1307, 209 L Ed 2d 390 (2021), we conclude that petitioner's sentencing satisfied the requirements of *Miller*. Accordingly, we affirm.

The relevant facts are procedural and undisputed. When petitioner was 16 years old, he killed a seven-year-old girl. For that crime, petitioner was charged with aggravated murder. Petitioner was tried as an adult, and he waived his right to a jury for the guilt and penalty phases of his trial. The court found petitioner guilty.[1] After petitioner was convicted, the court held a sentencing hearing to determine the appropriate sentence in accordance with ORS 163.150 (1997).[2] Under that statute, the court was required to sentence petitioner to life imprisonment without the possibility of release or parole unless the court, sitting as factfinder,

_____

[1] Petitioner was charged with three counts of aggravated murder. Count 1 was later dismissed. Petitioner was convicted of Counts 2 and 3, which were merged into a single count.

[2] ORS 163.150 (1997), *amended by* Or Laws 1999, ch 1055, § 1; Or Laws 2001, ch 306, § 1; Or Laws 2005, ch 480, § 1; Or Laws 2017, ch 359, § 4; Or Laws 2019, ch 635, § 5. All forthcoming references and citations to ORS 163.150 are to the 1997 version in effect at the time of petitioner's crime. Generally the law at the time of the crime applies to sentencing. *See State v. Flowers*, 136 Or App 555, 558, 902 P2d 624 (1995), *rev den*, 324 Or 513 (1997). In this case, petitioner committed the crime before the 1999 amendments to ORS 163.150 took effect. The parties cite both the current version of ORS 163.150 and the 1999 version, and do not provide a record of what version the sentencing court applied. For the purpose of our analysis, there is no significant difference in the operative language or the functional aspects of the 1997 and 1999 versions of the statute at issue here. We therefore consider petitioner's argument in the context of the 1997 version of ORS 163.150 that applied to petitioner's sentencing.

found that there were "sufficient mitigating circumstances to warrant life imprisonment." ORS 163.150(2)(a), (b) (1997). A sentence of life without the possibility of release or parole, also known as a "true life" sentence, is a life sentence that may not be shortened or reduced "by any judicial officer, [or by] the State Board of Parole and Post-Prison Supervision." ORS 163.105(1)(b).[3] Alternatively, a defendant who is sentenced under ORS 163.150 to "life imprisonment" must serve a minimum of 30 years in prison, at which point the defendant may petition to convert the sentence to life with the possibility of parole or release. ORS 163.105(1)(c); ORS 163.105(2).[4]

At petitioner's sentencing hearing, petitioner presented mitigating evidence and argued that various mitigating factors warranted a sentence of life with the possibility of parole, including petitioner's youth, difficult home life, a history of physical and psychological abuse by his parents since infancy, sexual abuse at the hands of a registered sex offender, low intelligence, and mental health issues. The state presented rebuttal evidence and asked for a life-without-parole sentence. After considering the evidence, including the evidence presented at the guilt-phase of the trial, the sentencing court discussed the mitigating factors relevant to petitioner's sentence. The court explained that petitioner

> "has certainly over the course of the trial and the last two days presented several of those [mitigating] factors, including [petitioner's] youth, his low I.Q., his mental health and background, the fact that he was going through a stressful time just before he killed [the victim]. Certainly he had an up and down and chaotic home life."

---

[3] ORS 163.105 has been amended since petitioner committed his crime; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

[4] Under ORS 163.105, a person convicted of aggravated murder and sentenced to "life imprisonment" may "[a]t any time after 25 years from the date of imposition of a minimum period of confinement pursuant to [ORS 163.105(1)(c)]," petition the Board of Parole and Post-Prison Supervision to "hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time." ORS 163.105(2). If the board "finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed," the board "shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release." ORS 163.105(3).

The court described how it had considered the mitigating factors alongside the evidence that "detract[ed]" from those factors. The court acknowledged that "certainly [petitioner's] youth is a mitigating factor in this case" but explained that "his behavior is reported to be some of the worst that's been seen in the * * * corrections facility" and that petitioner was likely to commit future crimes. As such, the court found that the state had "rebutted" and "in some situations substantially rebutted" the mitigating factors presented by petitioner. Therefore, the court concluded that there were not "sufficient mitigating factors which would allow [it] to impose anything but a full life sentence on [petitioner]." The court sentenced petitioner to life in prison without the possibility of parole or release.

Petitioner challenged his sentence on direct appeal. We affirmed without opinion and the Oregon Supreme Court denied review in 2004. Petitioner filed a timely petition for post-conviction relief in 2005, raising claims of ineffective assistance of trial and appellate counsel.[5] The post-conviction court denied relief.

Petitioner filed his second petition for post-conviction relief, at issue in this appeal, in 2016 after the United States Supreme Court decided *Miller* and *Montgomery v. Louisiana*, 577 US 190, 136 S Ct 718, 193 L Ed 2d 599 (2016). That petition alleged that petitioner's sentence of life without the possibility of parole

> "violates the Eighth and Fourteenth Amendments to the United States Constitution because the state court failed to follow the constitutionally mandated procedural requirements in determining [petitioner's] sentence identified in *Miller v. Alabama*, * * * and established by *Montgomery v. Louisiana*."

Specifically, petitioner contended that *Miller*, as clarified by *Montgomery*, "rendered life without parole an unconstitutional penalty" for "juvenile offenders whose crimes reflect the transient immaturity of youth." In petitioner's view, those cases required a sentencing court to go beyond consideration of a juvenile offender's chronological age, and to

---

[5] Petitioner filed an amended petition in 2006.

instead "give mitigating effect to the characteristics and cir-cumstances of youth" and impose a life without parole sen-tence only after determining that the offender "is so beyond repair that he or she is not capable of reform." Petitioner contended that the sentencing court failed to make those determinations and, as such, that he was entitled to a new sentencing hearing.

Respondent argued that petitioner's claim failed, because the sentencing court had discretion to impose a sen-tence less than life without parole, and properly considered petitioner's youth before imposing that sentence as required by *Miller* and *Montgomery*. Respondent also argued that the petition was barred by the procedural limitations in ORS 138.510(3) and ORS 138.550(3), which bar post-conviction relief for claims brought more than two years after the judgment of conviction becomes final and claims brought in successive petitions, respectively. Petitioner contended that, although the petition was untimely and successive, his claim satisfied the "escape clause" in both statutes because the ground for relief could not reasonably have been raised in the prior petition. *See* ORS 138.510(3); ORS 138.550(3).

The post-conviction court denied relief on the grounds that petitioner's claim was procedurally barred under both statutes and that petitioner's claim failed on the merits. On the merits, the court determined that, contrary to petitioner's argument, the sentencing court "did consider transient immaturity" before reaching the conclusion that life without parole was the appropriate sentence. In other words, the post-conviction court determined that, although the sentencing court was not obliged to do so, it "went through all the process" as if *Miller* and *Montgomery* were "law at the time."

Petitioner appeals, assigning error to the court's denial of post-conviction relief. Specifically, petitioner chal-lenges the court's conclusions that his claim was procedur-ally barred and that the sentencing court had complied with the procedural sentencing requirements of *Miller* and *Montgomery*. With respect to each of those issues, in the brief-ing and at argument on appeal, the parties raised essentially the same arguments as before the post-conviction court.

After this case was argued, however, the Supreme Court decided *Jones*, which further clarified what *Miller* requires before a juvenile homicide offender may be sentenced to life without parole. In light of those changes, we conclude that petitioner's sentencing proceedings complied with *Miller*, and we affirm. We explain that conclusion and our view of *Jones* in detail below. Additionally, because we affirm on the merits, we do not address whether petitioner's claim is procedurally barred. *See Kinkel v. Persson*, 363 Or 1, 12-13, 417 P3d 401 (2018), *cert den*, ___ US ___, 139 S Ct 789 (2019) (declining to address whether the petitioner's claim was procedurally barred because, even assuming the petitioner's claim was not barred, the claim failed on the merits). For context, we briefly discuss *Miller* and that line of precedent, before turning to our examination of *Jones*, and the parties' arguments in light of that case.

In 2012, *Miller* held that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" without affording the sentencer an opportunity to consider the juvenile's youth. 567 US at 479. In reaching that conclusion, the Supreme Court first looked to prior cases that categorically banned certain sentencing practices, specifically those focused on juveniles, *Roper v. Simmons*, 543 US 551, 125 S Ct 1183, 161 L Ed 2d 1 (2005), and *Graham v. Florida*, 560 US 48, 130 S Ct 2011, 176 L Ed 2d 825 (2010). *Miller*, 567 US at 470. Those cases established that children are constitutionally different from adults and that "youth matters" for the purposes of sentencing. *Id*. at 471-73. And, to the *Miller* Court, the *Graham* case served an additional function. It likened juvenile life without parole to the death penalty, thereby implicating a second group of cases—the Court's capital sentencing precedents "demanding individualized sentencing when imposing the death penalty." *Id*. at 475. In combination, the Court explained, those "two lines of precedent [led] to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Id*. at 470. Although the Court did not "foreclose a sentencer's ability" to impose life-without-parole sentences on juveniles convicted of homicide crimes, it required sentencers to "take into account how children are different,

and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

Four years later, the Court decided *Montgomery*. In that case, the Court held that *Miller* announced a substantive rule of law that applied retroactively in cases on state collateral review. *Montgomery*, 577 US at 208-09. In addition, the *Montgomery* Court outlined its view of a sentencer's obligations under *Miller*. Those obligations exceeded the requirement that a sentencer "consider a juvenile offender's youth before imposing life without parole." *Id*. at 208. *Miller*, the Court explained, "determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" *Id*. (quoting *Miller*, 567 US at 479-80). Thus, *Miller* "rendered life without parole an unconstitutional penalty for * * * juvenile offenders whose crimes reflect the transient immaturity of youth" and, therefore, "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Id*. (quoting *Miller*, 567 US at 479).

As applied in Oregon case law, the above cases have stood for the principle that "only the 'rare' juvenile who commits a homicide may be sentenced to life without parole." *White v. Premo (S065188)*, 365 Or 1, 17, 443 P3d 597 (2019), *cert dismissed*, ___ US ___, 140 S Ct 993 (2020). Accordingly, the Oregon Supreme Court explained in *White* that "the fact that the trial court considered a juvenile's age in sentencing the juvenile does not mean that the sentence comports with *Miller*'s requirements." *Id*. Applying those principles in analyzing whether a sentence comports with *Miller*, the Oregon Supreme Court has inquired whether a sentencing court's decision "reflects a determination that petitioner is one of the rare juvenile offenders whose crimes demonstrate irreparable corruption." *Id*. at 18; *see also Kinkel*, 363 Or at 24 (upholding the petitioner's sentence because, based on the trial court's findings, the petitioner was "within the class of juveniles who * * * may be sentenced to life without possibility of parole," those whose crimes "reflec[t] irreparable corruption rather than the transience of youth").

With that context in mind, we examine the United States Supreme Court's most recent decision construing *Miller*'s holding and accompanying requirements. That case, *Jones*, significantly affects *Miller*'s application and controls the outcome in the present case. In *Jones*, the petitioner was sentenced to mandatory life without parole for a homicide he committed as a juvenile. ___ US at ___, 141 S Ct at 1312. He sought post-conviction relief, and the Mississippi Supreme Court ordered a new sentencing hearing in accordance with *Miller*, "where the sentencing judge could consider [the petitioner's] youth and exercise discretion in selecting an appropriate sentence." *Id.* at ___, 141 S Ct at 1312-13. At the resentencing, the sentencing court acknowledged that it had discretion under *Miller* to impose a lesser sentence, but it imposed the same life-without-parole sentence. *Id.* at ___, 141 S Ct at 1313.

The petitioner argued that his resentencing failed to satisfy *Miller*, because a sentencer who imposes a life-without-parole sentence must "either (i) make a separate factual finding of permanent incorrigibility, or (ii) at least provide an on-the-record sentencing explanation with an 'implicit finding' of permanent incorrigibility." *Id.* at ___, 141 S Ct at 1313. The Supreme Court rejected each of the petitioner's arguments. According to the Court, neither *Miller* nor *Montgomery* imposed a formal factfinding requirement. *Id.* at ___, 141 S Ct at 1314-15. The Court disagreed with the petitioner's assertion that permanent incorrigibility is a prerequisite to the imposition of a life-without-parole sentence on a juvenile akin to "certain eligibility criteria, such as sanity or a lack of intellectual disability, that must be met before an offender can be sentenced to death." *Id.* at ___, 141 S Ct at 1315. Instead, the Court emphasized a different aspect of its death penalty jurisprudence as analogous, noting that *Miller* "repeatedly described youth as a sentencing factor akin to a mitigating circumstance." *Id.* In other words, *Miller* "required a sentencing procedure similar to the procedure that [the] Court has required for the individualized consideration of mitigating circumstances in capital cases." *Id.* That procedure "afford[s] sentencers wide discretion in determining the weight to be given relevant mitigating evidence" and does "not require the sentencer to

make any particular factual finding regarding those mitigating circumstances." *Id*. (internal quotation marks omitted). And, according to the Court, neither the *Montgomery* Court's assertions that life without parole would be reserved for the permanently incorrigible or the policy aims behind *Miller* necessitated a formal factfinding requirement. *Id*. at ___, 141 S Ct at 1317-18.

The Court was similarly unpersuaded by the petitioner's alternative argument, that a sentencer must provide an on-the-record sentencing explanation with an "implicit finding" of permanent incorrigibility. Such an explanation is not necessary to ensure that a sentencer considers a defendant's youth because, according to the Court, "if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth." *Id*. at ___, 141 S Ct at 1319 (emphasis in original). And as with the formal factfinding requirement, an on-the-record sentencing explanation was not required by *Miller*'s text or consistent with the Court's death penalty cases. Rather, the Court explained that, in its capital sentencing decisions, it had "never required an on-the-record sentencing explanation or an implicit finding regarding * * * mitigating circumstances." *Id*. at ___, 141 S Ct at 1320. Finally, the Court explained that an on-the-record sentencing explanation with an implicit finding of permanent incorrigibility "is not dictated by any historical or contemporary sentencing practice in the States." *Id*. at ___, 141 S Ct at 1321.

In sum, "[i]n *Miller*, the Court mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing' a life-without-parole sentence." *Id*. at ___, 141 S Ct at 1311 (quoting *Miller*, 567 US at 483). According to the *Jones* Court, no formal or implicit findings of permanent incorrigibility are integral to that process or necessary to ensure that a sentencer follows it. In sentencing a juvenile homicide offender, "a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Id*. at ___, 141 S Ct at 1313. Therefore, because the *Jones* petitioner's sentence "was not mandatory and the trial judge had discretion to impose a lesser punishment in light of [the

petitioner's] youth," the Court held that the sentence complied with its Eighth Amendment precedents. *Id*. at ___, 141 S Ct at 1322.

As noted, the parties in this case filed supplemental briefs after *Jones* was decided. We now discuss the parties' arguments in light of *Jones*. Prior to *Jones*, petitioner challenged the statutory scheme, contending that life without parole was the presumptive sentence under ORS 163.150, and that petitioner bore the burden of rebutting the presumption that life without parole was the appropriate punishment for petitioner's crime. In petitioner's view, that presumption contravened *Miller* and *Montgomery*'s precept that life without parole should be imposed on juvenile offenders only rarely. Petitioner also argued, as he did before the post-conviction court, that the sentencing court failed to "entertain the critical question under *Miller*," whether petitioner was among the "rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." Although petitioner acknowledged that the sentencing court was permitted to consider age as a mitigating circumstance by statute, he contended that the court gave "inadequate weight" to petitioner's youth and failed to "recognize that petitioner's age made him categorically less culpable than an adult."

In his supplemental brief addressing *Jones*, petitioner maintains that his sentence violates the Eighth Amendment. His arguments to that effect are substantially the same in that he challenges the statutory scheme that made life without parole the presumptive sentence for his crime, in addition to the sentencing court's purported failure to follow the process mandated by *Miller*. With respect to the statutory scheme, petitioner asserts, in addition to his original arguments, that the presumptive sentence was not "discretionary" as required by *Jones*, because petitioner was required to "activate the judge's discretion" to impose a lesser sentence. Perhaps due to *Jones*'s clear repudiation of any required factual finding of permanent incorrigibility, petitioner argues in his supplemental brief only that the sentencing court "did not consider youth in the way that *Miller* requires." He distinguishes the present case from

*Jones*, where the juvenile offender had already received a new sentencing hearing that complied with *Miller*.

Respondent argued that petitioner's life-without-parole sentence did not violate *Miller*, because the sentencing court impliedly found that petitioner's crime reflected irreparable corruption rather than the transience of youth. In its supplemental briefing, respondent contends that that implicit finding was unnecessary under *Jones*. Rather, respondent asserts that *Miller* and *Jones* are satisfied if the sentencer has discretion to consider youth, and does so, before imposing a life-without-parole sentence. According to respondent, the sentencing court here had statutory discretion to consider petitioner's youth, which it properly exercised before imposing petitioner's life-without-parole sentence.

We conclude that petitioner's sentencing hearing did not violate the Eighth Amendment. As we understand *Jones*, all that the Eighth Amendment requires is that a sentencer have discretion to consider a juvenile offender's youth and impose a sentence less than life without parole. That requirement was met here. As noted, petitioner was sentenced under ORS 163.150 (1997), which provides that life without parole is the appropriate sentence for the crime of aggravated murder, unless the jury—or, as here, the court, upon waiver of the jury—"finds that there are sufficient mitigating circumstances to warrant life imprisonment." ORS 163.150(2)(b) (1997). That statute also provides, in part, that the court "[s]hall conduct a sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment without the possibility of release or parole *** or life imprisonment as described in ORS 163.105(1)(c)."[6] ORS 163.150(3)(a)(B) (1997).[7] In that proceeding, "evidence

---

[6] As noted, a sentence of "life imprisonment" as described in ORS 163.105(1)(c) is a minimum sentence of 30 years imprisonment, that may be converted to a life sentence with the possibility of parole or release, subject to certain findings by the state board of parole.

[7] As noted, we consider petitioner's argument in the context of the 1997 version of ORS 163.150. That version of the statute directed the sentencing court to conduct the sentencing proceeding discussed above "[w]hen the defendant is found guilty of aggravated murder *upon a plea of guilty or no contest prior to the introduction of evidence before the trier of fact*, and the state advises the court on the record that the state declines to present evidence for purposes of sentencing the defendant to death." ORS 163.150(3)(a) (emphasis added). The italicized

may be presented as to any matter that the court deems relevant to sentence." ORS 163.150(1)(a) (1997). That statute then, allowed the court to consider relevant mitigating circumstances, including petitioner's youth, and to impose a lesser sentence. We disagree with petitioner's assertion that, because life without parole was the presumptive, or "default" sentence, the sentencing court lacked discretion. Or more precisely, we disagree that the court lacked the kind of minimum discretion that *Jones* required. In describing a satisfactory discretionary sentencing system, the *Jones* Court referred only to a system in which the sentencer was not prohibited from considering youth or imposing an alternative sentence to life without parole. *See Criminal Justice Reform Clinic v. Board of Parole*, 313 Or App 592, 595, 496 P3d 688 (2021) (concluding, in part, that certain rules relating to parole consideration were facially valid under *Jones* because the rules allowed for "consideration of any 'other' [mitigating] factor, including an offender's youth at the time of commission").

Petitioner's argument that the sentencing court failed to follow the process mandated by *Miller* is likewise untenable under *Jones*. Petitioner's original assertion that the court neglected to entertain the "critical question" of permanent incorrigibility is foreclosed by *Jones*'s central holding. As for petitioner's argument that the sentencing court failed to properly consider petitioner's youth, there is evidence in the record that the sentencing court considered petitioner's youth as a mitigating factor. After *Jones*, no more is required.

We pause to note that, going forward, it is somewhat unclear under what circumstances we would conclude that a sentencing court failed to adequately consider a juvenile offender's youth. As petitioner notes, the sentence at issue in *Jones* was imposed after the original sentence had been remanded for reconsideration in compliance with *Miller*. Not every case will have that procedural background, where the sentencer was so clearly on notice to consider youth. And,

---

language was removed by a 1999 amendment to the statute. Or Laws 1999, ch 1055, § 1. Although petitioner did not enter a plea of guilty or no contest in this case, it is clear from the record that the parties and the sentencing court understood that ORS 163.150(3)(a) nonetheless applied.

although *Jones*'s holding concerning findings of permanent incorrigibility was unmistakable, the opinion left other aspects of *Miller*'s scope less certain. That is particularly true if we recognize the practical distinction for sentencers between a finding of permanent incorrigibility and consideration of youth.

To begin with, *Jones* expressly did not overrule *Miller* and *Montgomery. Jones*, ___ US at ___, 141 S Ct at 1321. The Court quoted with approval *Miller*'s mandate that "a sentencer follow a certain process—considering an offender's youth" as well as *Montgomery*'s statement that a hearing "where youth and its attendant characteristics are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." *Id*. at ___, 141 S Ct at 1316, 1317-18. But *Jones* also explained that sentencers who have discretion to consider youth necessarily will do so. That is, the Court appeared to endorse the idea that *Miller* required sentencers to consider juvenile offenders' youth and its attendant characteristics, but implicitly concluded that neither *Miller* nor *Montgomery* created *any* safeguards to ensure that sentencers did so, apart from prohibiting mandatory life-without-parole sentences. *See id*. at ___, 141 S Ct at 1330 (Sotomayor, J., dissenting) ("It does not matter whether the sentencer meaningfully considers youth: The Court assumes it will * * * but ultimately, the mere existence of a discretionary sentencing procedure suffices." (Internal quotation marks omitted.)).

Yet the Court acknowledged that, under its death penalty cases, a sentence violates the Eighth Amendment if the sentencer expressly refuses to consider relevant mitigating circumstances as a matter of law. *Id*. at ___ n 7, 141 S Ct at 1320 n 7 (citing *Eddings v. Oklahoma*, 455 US 104, 114-15, 102 S Ct 869, 71 L Ed 2d 1 (1982)). By analogy, the Court explained, if a sentencer refuses to consider a juvenile homicide offender's youth as a matter of law, that juvenile "might be able to raise an Eighth Amendment claim." *Id*. The Court's recognition of one such circumstance leaves open the possibility that we may reverse a juvenile's life-without-parole sentence in other similar situations where the record affirmatively reflects the sentencer's refusal to

consider youth, despite *Jones*'s insistence that "it would be all but impossible for a sentencer to avoid considering that mitigating factor." *Id*. at ___, 141 S Ct at 1319. *Jones* raises several questions of that nature. *See id*. at ___, 141 S Ct at 1331-34 (Sotomayor, J., dissenting) (discussing *Jones*'s treatment of *Miller* and *Montgomery*).

        In any case, we need not attempt to resolve the above questions because, as noted, the sentencing court did consider petitioner's youth here. During sentencing, the court explained that, in accordance with the statutory framework, it would determine whether there were "sufficient mitigating factors to impose a life sentence with the opportunity for parole after 30 years." The court noted that petitioner had presented several mitigating factors "including [petitioner's] youth, his low I.Q., his mental health and background, the fact that he was going through a stressful time just before he killed [the victim]," and his "up and down and chaotic home life." The court acknowledged that "certainly [petitioner's] youth is a mitigating factor in this case" but explained that "his behavior is reported to be some of the worst that's been seen in the * * * corrections facility" and that petitioner was likely to commit future crimes. Ultimately, the court concluded that "[e]ach factor that's been presented by [petitioner] has been rebutted by the state" and that there were not sufficient mitigating circumstances "to impose anything but a full life sentence."

        In sum, we conclude that petitioner's sentencing satisfied the procedural requirements of *Miller* and the Eighth Amendment's prohibition against cruel and unusual punishments, as subsequently interpreted by *Jones*. Therefore, the post-conviction court did not err in denying petitioner's claim for relief on that basis. And, because we conclude that petitioner's claim for post-conviction relief fails on the merits, we do not need to address whether his claim is procedurally barred under ORS 138.550(3) and ORS 138.510(3).

        Affirmed.